Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2017 CO 71**

**No. 13SC68, <u>Nicholls v. People</u> — Criminal Trials — Right of Accused to Confront Witnesses — Exceptions to Hearsay Rule — Statements Against Interest.**

In light of the U.S. Supreme Court's holding in <u>Davis v. Washington</u>, 547 U.S. 813 (2006), the supreme court holds that nontestimonial hearsay statements do not implicate a defendant's state constitutional right to confrontation, overruling <u>Compan v. People</u>, 121 P.3d 876 (Colo. 2005), which held otherwise. Because the hearsay statements at issue in this case were nontestimonial, they did not implicate Colorado's Confrontation Clause, and the court of appeals did not err in concluding that the defendant's confrontation right was not violated.

The supreme court further holds that the third requirement for the admission of inculpatory hearsay statements against interest, announced in <u>People v. Newton</u>, 966 P.2d 563, 576 (Colo. 1998) (requiring corroborating circumstances to demonstrate the statement's trustworthiness), is not constitutionally required for nontestimonial statements against interest. To admit a third party's nontestimonial statements against interest under the version of CRE 804(b)(3) that existed at the time of the defendant's 2008 trial, only two conditions needed to be satisfied: (1) the witness must have been

unavailable, and (2) the statement must have tended to subject the declarant to criminal liability. The supreme court concludes that the third party's nontestimonal statements against interest satisfied these two requirements, and the trial court did not abuse its discretion in admitting these statements as a statement against interested under CRE 804(b)(3), as that Rule existed at the time of the defendant's trial.

Finally, the supreme court holds that the trial court did not abuse its discretion in admitting testimony about the defendant's response to the death of her second child because the testimony was relevant and not unduly prejudicial; nor did the trial court plainly err in admitting testimony about the cause second child's death because the brief, isolated statements did not so undermine the trial's fairness as to cast serious doubt on the reliability of the defendant's conviction.

Accordingly, the supreme court affirms the judgment of the court of appeals.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2017 CO 71

### Supreme Court Case No. 13SC68
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 09CA137

### Petitioner:

Deborah Lee Nicholls,

v.

### Respondent:

The People of the State of Colorado.

### Judgment Affirmed
*en banc*
June 19, 2017

**Attorneys for Petitioner:**
Douglas K. Wilson, Public Defender
Andrea R. Gammell, Senior Deputy Public Defender
  *Denver, Colorado*

**Attorneys for Respondent:**
Cynthia H. Coffman, Attorney General
Paul Koehler, First Assistant Attorney General
  *Denver, Colorado*

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.

¶1     In November 2008, a jury convicted Deborah Lee Nicholls for the first degree murders of her three children, and for conspiracy, attempted theft, using a controlled substance, and possessing methamphetamine.  On appeal, Nicholls argued, inter alia, that the trial court erred in admitting at trial the statements that her then-husband, Tim Nicholls, made to his cellmate about Nicholls' involvement in their children's deaths.  Nicholls contended that these statements violated her state constitutional right of confrontation and were inadmissible hearsay.  Nicholls also argued that the trial court erroneously admitted her mother's testimony about Nicholls' reaction to her second[1] child's death years earlier, and her husband's cellmate's testimony about that child's cause of death from sudden infant death syndrome ("SIDS").  Nicholls maintained that this testimony was both irrelevant and unduly prejudicial.

¶2     In an unpublished, unanimous opinion, the court of appeals affirmed Nicholls' convictions.  People v. Nicholls, No. 09CA137, slip op. at 1 (Colo. App. Dec. 13, 2012).  Relevant here, the court of appeals held that the husband's nontestimonial statements to his cellmate did not implicate Nicholls' right of confrontation, and were admissible under Colorado's evidentiary rules as statements against interest.  Id. at 8–9.  It further held that the trial court did not abuse its discretion in admitting Nicholls' mother's statements, id. at 21, and that any error in the admission of the cellmate's brief testimony about her second child's death from SIDS was not plain error, id. at 22–23.

---

[1] The People refer to this child as Nicholls' first child, as did the court of appeals.  We defer to Nicholls' description of this child as her second child.

We granted Nicholls' petition for certiorari review[2] and now affirm the judgment of the court of appeals.

## I. Facts and Procedural History

¶3　On the night of March 6, 2003, Nicholls' husband, Tim, set fire to their home while she was at their business, the Tailgate Bar. The fire killed their three children, ages eleven, five, and three. After the fire consumed the house, Nicholls returned from the Tailgate Bar and claimed to have left candles burning inside the house. She showed little concern for the children and did not attend their funerals.

¶4　Nicholls and her husband maintained the fire was an accident. They submitted insurance claims for the loss of their house and personal property and specifically inquired about "child riders" to the husband's life insurance policy that would have covered a child's accidental death. Nicholls was upset to learn that her husband's policy did not include such coverage.

¶5　Nicholls and her husband were charged and tried separately. The husband was charged with multiple counts of first degree murder, arson, and other crimes. While confined at the El Paso County Jail before his trial, the husband confessed to his cellmate that he had acted with Nicholls to burn down their house and kill their children to collect insurance proceeds. A jury convicted the husband of multiple counts

---

[2] We granted certiorari to review the following issues:

1. Whether hearsay statements which shift blame to the accused are admissible as statements against interest.
2. Whether it was error to admit evidence that petitioner's second child died of SIDS.

in July 2005, and the court of appeals affirmed his convictions. <u>People v. Timothy Nicholls</u>, No. 07CA1248 (Colo. App. Jan. 14, 2010), <u>cert. denied</u>, No. 10SC124, 2010 WL 3389331 (Colo. Aug. 30, 2010).

¶6    In 2007, a grand jury indicted Nicholls on several charges, including three counts of first degree murder—felony murder; three counts of first degree murder—child under twelve; and three counts of child abuse resulting in death. These charges were joined with an earlier indictment for attempted theft, use of a controlled substance, and two counts of possession of a controlled substance.

¶7    At trial, the People's theory was that Nicholls and her husband needed money for drug-related debts; they conspired to set their house on fire and kill their children so that they could collect $250,000 in expected insurance proceeds on their children's lives and their home's value.

¶8    Over Nicholls' objections, the husband's cellmate testified for the People about the statements the husband made to him regarding the fire.[3] According to the cellmate, the husband said that he and Nicholls planned the fire together and built fires in an outdoor fire pit in the months beforehand to accustom their neighbors to seeing flames in their yard. The husband stated that Nicholls wiped Goof-Off (a highly flammable solvent) on the furniture before leaving for work, and that he fed the children a snack on that furniture so that they would get Goof-Off on their pajamas. The husband said that he sprayed more Goof-Off around the house after putting the children to bed, and

---

[3] The jury also saw a video recording of the cellmate's interview with a detective in which the cellmate recounted the husband's statements.

4

then set the house on fire by knocking over a candle. The husband explained that he opened the garage door to feed the fire, heard his son's cries, went upstairs, and jumped out his bedroom window. The husband drew diagrams of the house and surrounding neighborhood and showed the cellmate where he sprayed Goof-Off. These diagrams were admitted as exhibits at trial. The husband told the cellmate that Nicholls was the mastermind of the crime, that she got "strung out" on drugs and convinced him to set the fire, and that his lawyer advised him not to divorce Nicholls to ensure that neither could testify against the other. The cellmate also testified that the husband told him that Nicholls "killed her [second] baby," and that that child's death was ruled a SIDS death.

¶9 Nicholls' mother also testified, over Nicholls' objection, that Nicholls cried non-stop for three days when her second child died years earlier of SIDS, yet she did not grieve when her three children died in the fire.

¶10 The People's forensic and physical evidence corroborated the cellmate's account about the fire. Investigators discovered cans of Goof-Off in the house and shrubs, and a chemical analysis confirmed the presence of an accelerant on the children's pajamas. A trained fire detection dog alerted to petroleum products in the living room, and forensic experts testified the fire was intentionally set at several places in that room. Nicholls maintained her defense that the fire was accidental and that the cellmate fabricated the statements he claimed the husband made about the fire.

¶11 The jury found Nicholls guilty of all charges. Nicholls was sentenced to three consecutive life terms for the murders; twenty-four years for conspiracy; and one year

5

each for attempted theft, use of a controlled substance, and possession of a controlled substance.

¶12 The court of appeals affirmed Nicholls' convictions.[4] <u>Nicholls</u>, slip op. at 41. This appeal followed.

## II. Analysis

¶13 We first address Nicholls' argument that the trial court's admission of her husband's statements to his cellmate violated her right of confrontation and were inadmissible hearsay. We then address Nicholls' contentions that the trial court erred in permitting her mother and the cellmate to testify about the earlier death of her second child.

## A. Husband's Statements to His Cellmate

¶14 Nicholls argues that the admission of her husband's statements to his cellmate violated her confrontation right under the Colorado Constitution. She further asserts that the husband's statements were not admissible as statements against interest under CRE 804(b)(3) because they shifted blame to her and were self-serving.

¶15 Parties are generally prohibited from introducing hearsay statements into evidence. <u>See</u> CRE 802. This is because "[h]earsay statements are presumptively unreliable since the declarant is not present to explain the statement in context." <u>Blecha v. People</u>, 962 P.2d 931, 937 (Colo. 1998). "Moreover, since the declarant is not subjected to cross-examination, the truthfulness of the statement is questionable." <u>Id.</u>

---

[4] The court of appeals vacated Nicholls' sentence as to the imposition of prosecution costs and remanded for a hearing on Nicholls' ability to pay those costs. <u>Nicholls</u>, slip op. at 41.

¶16 To be admissible, a hearsay statement must: (1) comply with a specific exception to the hearsay rule, and (2) not offend a defendant's constitutional right to confrontation. People v. Newton, 966 P.2d 563, 572 (Colo. 1998). "These two requirements . . . do not necessarily involve identical inquiries." Id. at 572–73.

¶17 We review a trial court's evidentiary rulings for abuse of discretion. A trial court abuses its discretion only when its ruling is manifestly arbitrary, unreasonable, or unfair. People v. Stewart, 55 P.3d 107, 122 (Colo. 2002). Under the non-constitutional harmless error standard, an erroneous evidentiary ruling does not require reversal unless the ruling affects the accused's substantial rights. Yusem v. People, 210 P.3d 458, 469 (Colo. 2009). "If a reviewing court can say with fair assurance that, in light of the entire record of the trial, the error did not substantially influence the verdict or impair the fairness of the trial, the error may properly be deemed harmless." People v. Gaffney, 769 P.2d 1081, 1088 (Colo. 1989). Confrontation claims are reviewed de novo and under the constitutional harmless error standard. Bernal v. People, 44 P.3d 184, 198, 200 (Colo. 2002). A constitutional error requires reversal unless the reviewing court is "confident beyond a reasonable doubt that the error did not contribute to the guilty verdict." Id. at 200.

¶18 We first address whether the husband's statements to the cellmate violate Nicholls' right of confrontation. We then address whether the statements are admissible under our rules of evidence.

## 1. Husband's Nontestimonial Statements Did Not Implicate the Confrontation Clause

¶19 The United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Colorado's Confrontation Clause similarly provides that "[i]n all criminal prosecutions, the accused shall have the right . . . to meet the witnesses against him face to face." Colo. Const. art. II, § 16. Our decisions "evidence a reasoned attempt to 'maintain consistency between Colorado law and federal law'" in this area. Compan v. People, 121 P.3d 876, 886 (Colo. 2005) (quoting Blecha, 962 P.2d at 941).

¶20 Because "[t]he cases applying the federal right are relevant to our present inquiry" and "provid[e] useful guidance for our consideration of . . . rights under [Colorado's Confrontation Clause]," People v. Dement, 661 P.2d 675, 680–81 (Colo. 1983), abrogated on other grounds by People v. Fry, 92 P.3d 970 (Colo. 2004), we start with an examination of federal Confrontation Clause jurisprudence.

### a. Federal Confrontation Clause Jurisprudence

¶21 In Ohio v. Roberts, 448 U.S. 56 (1980), the U.S. Supreme Court held that the federal Confrontation Clause countenances the admission of hearsay only if: (1) the declarant is unavailable to testify, and (2) the statement bears adequate "indicia of reliability." Id. at 65–66. Under the Roberts test, the reliability of the statement could be inferred if it fell "within a firmly rooted hearsay exception" or if the statement bore "particularized guarantees of trustworthiness." Id. at 66.

¶22    The Supreme Court revisited its Confrontation Clause analysis and the Roberts test in Crawford v. Washington, 541 U.S. 36 (2004).  The Court examined the historical roots of the Confrontation Clause and concluded that it is principally concerned with "testimonial" statements, i.e., statements made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.  Id. at 51–53.  The Court retreated from the "reliability" prong of the Roberts test for the admission of hearsay, reasoning that where testimonial statements are involved, it did not think the Framers meant to leave the Sixth Amendment's protections to the vagaries of the rules of evidence or amorphous notions of "reliability."  Id. at 60–61.  The Court explained that the Confrontation Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination."  Id. at 61.  The Court thus concluded that the federal clause bars admission of testimonial hearsay of a witness unless the declarant is unavailable at trial and the defendant had a prior opportunity to cross-examine him.  In short, Crawford "overruled Roberts . . . by restoring the unavailability and cross-examination requirements," Davis v. Washington, 547 U.S. 813, 825 n.4 (2006), and by striking Roberts' reliability requirement for testimonial hearsay.  Although the Court in Crawford declined to formulate a comprehensive definition of "testimonial," it provided some guidance, noting that "it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."  Crawford, 541 U.S. at 68.

9

¶23 In 2006, the Supreme Court held in <u>Davis v. Washington</u> that the federal Confrontation Clause applies only to testimonial statements and not to nontestimonial statements. <u>Davis</u>, 547 U.S. at 821–25. Drawing upon its prior analysis in <u>Crawford</u>, the Court explained:

> Only [testimonial statements] cause the declarant to be a "witness" within the meaning of the Confrontation Clause. It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.

<u>Id.</u> at 821 (citing <u>Crawford</u>, 541 U.S. at 51).

## b. Colorado Confrontation Clause Jurisprudence

¶24 In 1983, we adopted the Supreme Court's <u>Roberts</u> test in <u>People v. Dement</u>, 661 P.2d at 681. <u>Fry</u>, 92 P.3d at 975. Thus, under <u>Dement</u>, hearsay is admissible under Colorado's Confrontation Clause only if: (1) the declarant is unavailable to testify, and (2) the statement bears sufficient indicia of reliability. <u>Dement</u>, 661 P.2d at 680–81.

¶25 Some twenty years later in <u>People v. Fry</u>, we had the opportunity to revisit <u>Dement</u> in light of the Supreme Court's decision in <u>Crawford</u>, which, as discussed above, rejected the reliability prong of the <u>Roberts</u> test in favor of an inquiry into whether the defendant had a prior opportunity for cross-examination. <u>Fry</u>, 92 P.3d at 972–74. Reasoning that the holding in <u>Crawford</u> was limited to "testimonial statements," we jettisoned the <u>Roberts</u> "indicia of reliability" analysis that we had adopted in <u>Dement</u>, <u>id.</u> at 976, and held that a witness's previous testimony is not admissible at trial unless the witness is unavailable and the defendant had an adequate prior opportunity for cross-examination, <u>id.</u> at 981.

10

¶26    In 2005, we held in <u>Compan</u> that the <u>Dement</u>-<u>Roberts</u> test still governed the admission of <u>nontestimonial</u> statements under the Colorado Confrontation Clause. <u>Compan</u>, 121 P.3d at 885. We recognized that <u>Fry</u> expressly overruled <u>Dement</u> by rejecting the reliability prong of the <u>Roberts</u> test, but noted that our holding in <u>Fry</u> "was limited to testimonial statements" and that "nontestimonial statements were not at issue" in that case. <u>Id.</u> at 884. The following year, we applied <u>Compan</u> in <u>People v. Vigil</u>, 127 P.3d 916 (Colo. 2006), and reaffirmed that "[t]o admit <u>non-testimonial</u> evidence when the defendant has not had a prior opportunity for cross-examination, the prosecution must show that the declarant is unavailable and the statement bears sufficient indicia of reliability." <u>Id.</u> at 927 (emphasis added) (citing <u>Dement</u>, 661 P.2d at 679–81; <u>Compan</u>, 121 P.3d at 885).

### c.  Revisiting <u>Compan</u> in Light of <u>Davis</u>

¶27    Since the Supreme Court held in <u>Davis</u> in 2006 that nontestimonial hearsay does not implicate the federal Confrontation Clause, we have not squarely addressed how, if at all, <u>Davis</u> affects the admission of nontestimonial evidence under Colorado's Confrontation Clause.[5]    <u>Davis</u> squarely rejected our conclusion in <u>Compan</u> that

---

[5] We acknowledged <u>Davis</u>'s distinction between testimonial and nontestimonial statements in <u>Arteaga-Lansaw v. People</u>, 159 P.3d 107, 109 (Colo. 2007), when discussing a federal Confrontation Clause claim. And we noted in <u>Raile v. People</u>, 148 P.3d 126 (Colo. 2006), that we had decided <u>Vigil</u> (which reaffirmed <u>Compan</u> and its holding that the <u>Dement</u>-<u>Roberts</u> test controls the admission of nontestimonial hearsay under Colorado's Confrontation Clause) "before this Court had the benefit of the <u>Davis</u> decision and that we are bound to follow later decisions by the United States Supreme Court." <u>Id.</u> at 130 n.6 (citing <u>Vigil</u>, 127 P.3d at 921).

11

"Roberts continues to govern federal constitutional scrutiny of nontestimonial evidence." See Compan, 121 P.3d at 881.

¶28 The parties agree that the husband's statements at issue in this case were nontestimonial. The husband did not confess to a law enforcement officer or in the course of a formalized proceeding; rather, he confessed to his cellmate while they shared a cell in the county jail. Nothing in the record suggests that the husband knew his cellmate was an informant, and the husband told the cellmate not to tell anyone what he had conveyed.

¶29 Because the husband's statements were nontestimonial, this case presents the opportunity to revisit Compan in light of Davis and determine whether nontestimonial hearsay implicates the Colorado Confrontation Clause. While stare decisis requires this court to follow the rule of law it established in earlier cases, Bedor v. Johnson, 2013 CO 4, ¶ 23, 292 P.3d 924, 929, the doctrine "does not exclude room for growth in the law, and the courts are not without power to depart from a prior ruling, or to overrule it, where sound reasons exist," Creacy v. Indus. Comm'n, 366 P.2d 384, 386 (Colo. 1961).

¶30 In light of the U.S. Supreme Court's ruling in Davis, we now overrule Compan and hold that Colorado's Confrontation Clause applies only to testimonial statements and that nontestimonial statements do not implicate a defendant's state constitutional right to confrontation. Sound reasons exist for overruling our holding to the contrary in Compan.

¶31    First, we have long interpreted Colorado's Confrontation Clause as commensurate with the federal Confrontation Clause.  See, e.g., Compan, 121 P.3d at 885–86 (rejecting the petitioner's argument that the state Confrontation Clause protects broader rights than the federal Confrontation Clause); Blecha, 962 P.2d at 941 (explaining that Dement adopted the Roberts test "[i]n an effort to maintain consistency between Colorado law and federal law"); Dement, 661 P.2d at 680–81.  Our holding today maintains the consistency between state and federal law on this issue.

¶32    Second, the Supreme Court's reasoning in Davis is sound.  As the Supreme Court explained, the text of the federal Confrontation Clause refers to confronting "witnesses."  Davis, 547 U.S. at 821 ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." (emphasis added) (quoting U.S. Const. amend. VI)).  Only testimonial statements cause a declarant to be a "witness" within the meaning of the Clause.  Davis, 547 U.S. at 821.  Indeed, "[i]t is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."  Id.  We conclude that the Supreme Court's logic in Davis applies with equal force to Colorado's Confrontation Clause, which similarly refers to "witnesses."  Colo. Const. art. II, § 16 ("In criminal prosecutions the accused shall have the right . . . to meet the witnesses against him face to face." (emphasis added)).

¶33    Finally, neither Compan nor Dement contains independent, state constitutional reasoning that demands adherence to the Dement-Roberts test for nontestimonial hearsay.  Because the Roberts decision on which Compan and Dement rested is no

13

longer good law under <u>Crawford</u> and <u>Davis</u>, our holding in <u>Compan</u> that <u>Roberts</u> governs the admission of nontestimonial statements can no longer stand. For these reasons, we overrule that portion of <u>Compan</u> and hold that nontestimonial statements do not implicate Colorado's Confrontation Clause.

¶34 Here, because the husband's statements were nontestimonial, they did not implicate the Colorado Confrontation Clause, and the court of appeals did not err in concluding that Nicholls' confrontation rights were not violated. <u>See</u> <u>Nicholls</u>, slip. op. at 9.

## 2. Husband's Statements Were Admissible Under CRE 804(b)(3)

¶35 Having concluded that the admission of the husband's statements did not violate Nicholls' right of confrontation, we now address whether the statements were admissible under CRE 804(b)(3) as statements against interest.

¶36 At the time of Nicholls' trial in 2008, CRE 804(b)(3) provided the following exception to the hearsay rule for a statement against interest:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: . . . (3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary and proprietary interest, or so far tended to subject him to civil or criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to <u>exculpate</u> the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

CRE 804(b)(3) (2008) (emphasis added). Although the text of the rule at that time required that "corroborating circumstances clearly indicate the trustworthiness of the

14

statement" when it is offered to <u>exculpate</u> the accused, it did not impose a corroboration requirement for statements against penal interest offered to <u>inculpate</u> the accused, such as the husband's statements at issue in this case. <u>See</u> <u>People v. Newton</u>, 966 P.2d 563, 574 (Colo. 1998).

### a. <u>Newton</u>'s Framework

¶37 In <u>Newton</u>, we addressed the admissibility of hearsay statements under CRE 804(b)(3) offered to <u>inculpate</u> the defendant. 966 P.2d at 574. There, we considered whether the trial court erred in admitting a witness's inculpatory statements to a detective as statements against interest, where the witness refused to testify at trial. <u>Id.</u> at 565–66. The witness in that case was the defendant's girlfriend, who gave a voluntary statement to a detective indicating her knowledge of an armed robbery and the defendant's involvement in it, but invoked her Fifth Amendment right not to testify at trial. <u>Id.</u> at 565–67.

¶38 Noting that "[t]he text of CRE 804(b)(3) does not impose a corroboration requirement for inculpatory statements," we looked to a court of appeals decision and several federal decisions that nevertheless applied a corroboration requirement to statements against penal interest offered to inculpate the defendant. <u>Id.</u> at 574–75. We observed that such a requirement is rooted in the Confrontation Clause:

> Most courts that have required corroboration for inculpatory statements have done so out of concern that such statements comply with the Confrontation Clause. It therefore makes sense that the corroboration requirement for inculpatory statements, which is rooted in the Confrontation Clause, . . . can only be satisfied by looking to the inherent trustworthiness surrounding the making of the statement.

15

Id. at 575 (citation omitted).

¶39 We therefore concluded in Newton that three conditions must be satisfied to admit a third party witness's statement against interest under CRE 804(b)(3) when the statement is offered to inculpate the defendant. First, the witness must be unavailable as required by CRE 804(a). Id. at 576. Second, the statement must tend to subject the declarant to criminal liability; that is, the trial court must determine whether a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. Id. Both of these requirements were derived from the text of CRE 804(b)(3). Relevant here, we added a third prong requiring corroborating circumstances that demonstrate the trustworthiness of the statement:

> Third, the People must show by a preponderance of evidence that corroborating circumstances demonstrate the trustworthiness of the statement. In conducting this third inquiry, a trial court should limit its analysis to the circumstances surrounding the making of the statement and should not rely on other independent evidence that also implicates the defendant. Appropriate factors for a trial court to consider include: where and when the statement was made, to whom the statement was made, what prompted the statement, how the statement was made, and what the statement contained.

Id. (emphasis added).

### b. Revisiting Newton's Third Prong in Light of Our Confrontation Clause Holding

¶40 In light of our holding today that the Colorado Confrontation Clause applies only to testimonial statements, we also now hold that the third prong of Newton's analytical framework is not constitutionally required for nontestimonial statements

against interest.[6]  We created this third prong in <u>Newton</u> specifically to protect confrontation rights, <u>see</u> <u>id.</u> at 575–76, but as discussed above, confrontation rights are not implicated by the admission of nontestimonial hearsay statements.

¶41    Thus, to admit a third party's nontestimonial statement against interest under the version of CRE 804(b)(3) that existed at the time of Nicholls' 2008 trial, only two conditions needed to be satisfied: (1) the witness must have been unavailable, and (2) the statement must have tended to subject the declarant to criminal liability.

---

[6] CRE 804(b)(3) was amended in 2010 to clarify, in light of our holding in <u>Newton</u>, that corroborating circumstances that demonstrate the trustworthiness of a statement are required regardless of whether the statement is offered to inculpate or exculpate an accused.  CRE 804(b)(3) now provides:

> (3) Statement against interest. A statement that:
>
> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and
>
> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.
>
> COMMITTEE COMMENT
>
> The rule was revised, consistent with recent amendments to [Fed. R. Evid. 804(b)(3)], only to clarify that corroborating circumstances are required regardless of whether a statement is offered to inculpate or exculpate an accused. <u>See</u> <u>People v. Newton</u>, 966 P.2d 563 (Colo. 1998) (prosecutors seeking to admit statements against the accused must satisfy the corroboration requirement solely by reference to the circumstances surrounding its making).

This case concerns the prior version of the rule in effect at Nicholls' 2008 trial.

### c. Other Relevant Holdings in <u>Newton</u> Concerning the Scope of an Admissible "Statement" Remain Good Law

Other holdings in <u>Newton</u> concerning the scope of an admissible "statement" continue to govern the admission of inculpatory statements against interest under CRE 804(b)(3). We underscore two here that are relevant to Nicholls' arguments.

First, this court held that in addition to "a narrative's precise statement against penal interest," "<u>related, collaterally neutral statements are admissible</u> under CRE 804(b)(3)." <u>Id.</u> at 578 (emphasis added). We adopted a broad definition of "statement," expressly rejecting the Supreme Court's narrower approach to the federal rule in <u>Williamson v. United States</u>, 512 U.S. 594 (1994). <u>Newton</u>, 966 P.2d at 578. The <u>Williamson</u> Court concluded that the federal rule intended the term "statement" to refer to a single declaration or remark, rather than a "report or narrative." <u>Williamson</u>, 512 U.S. at 599. The Court then held that collateral, non-self-inculpatory statements are not admissible under Fed. R. Evid. 804(b)(3), even if they are made within a broader narrative that is generally self-inculpatory. <u>Id.</u> at 600–02.

We ultimately rejected the <u>Williamson</u> approach because "Colorado case law has interpreted CRE 804(b)(3) more broadly than the Supreme Court interpreted Fed. R. Evid. 804(b)(3) in <u>Williamson</u>." <u>Newton</u>, 966 P.2d at 577. We concluded that "a more permissive approach" than <u>Williamson</u> "is consistent with Colorado case law and represents the better evidentiary policy." <u>Id.</u> at 577. We noted that Justice Kennedy's concurring opinion in <u>Williamson</u> strongly disagreed with the majority's interpretation of the federal rule, and instead advocated an approach similar to Dean McCormick's

view that collateral statements of a neutral character should be admitted, while collateral statements of a self-serving character should not. Id. at 576–77. Implicitly adopting the view expressed in Justice Kennedy's concurrence, we held that a narrative's precise statement against interest and related, collaterally neutral statements are admissible under CRE 804(b)(3). Id. at 578; see also Williamson, 512 U.S. at 620 (Kennedy, J., concurring in judgment).

¶45 We also adopted from Justice Kennedy's concurrence two overarching limitations on the admission of a statement against interest. "First, statements that are so self-serving as to be unreliable should be excluded. Second, if the trial court determines that the declarant had a significant motivation to curry favorable treatment, then the entire narrative is inadmissible." Newton, 966 P.2d at 579; see also Williamson, 512 U.S. at 620.

### d. Application to this Case

¶46 To summarize, we hold that to admit a third party's nontestimonial statement against interest under the version of CRE 804(b)(3) that existed at the time of Nicholls' 2008 trial, only two conditions needed to be satisfied: (1) the witness must have been unavailable, and (2) the statement must have tended to subject the declarant to criminal liability. If the statement met these requirements, then the court should have admitted "all statements related to the precise statement against penal interest" unless the statement was so self-serving as to be unreliable, or unless the declarant had a significant motivation to curry favorable treatment such that the entire narrative should be excluded. See Newton, 966 P.2d at 579 (quoting Williamson, 512 U.S. at 620).

19

¶47     Here, the two conditions of CRE 804(b)(3) were satisfied.  First, it is undisputed that the husband was unavailable to testify.  Second, the husband's statements to his cellmate tended to subject him to criminal liability.

¶48     The husband confessed to his cellmate that he and Nicholls had long planned to set fire to their home with their children inside to collect insurance proceeds.  The husband described how he executed their plan when he put the children to bed in pajamas laced with Goof-Off, and purposely knocked a lit candle onto the living room furniture.  He told the cellmate that he opened the garage door to accelerate the fire's spread, ignored his son's cries, and jumped out of his bedroom window.  These statements directly subjected the husband to criminal liability and were against his penal interest.  We agree with the court of appeals that the trial court did not abuse its discretion in concluding that the husband's confession was "highly incriminating and exposed him to criminal liability," and that the trial court therefore did not err in admitting it as a statement against interest under CRE 804(b)(3).  See Nicholls, slip op. at 10–11.  For the same reasons, we are not persuaded by Nicholls' assertion that the majority of her husband's statements were not actually against his interest but instead shifted blame to Nicholls as the more culpable party.

¶49     Nicholls' contention that her husband's statements were not sufficiently reliable to satisfy the third prong of the Newton analysis likewise fails.  Though the court of appeals addressed this argument, see id. at 11–12, we need not consider it.  As explained above, we hold that the third prong of the Newton test, which was grounded

20

in the Confrontation Clause, is not constitutionally required for the admission of a nontestimonial statement against interest.

¶50 Nicholls' argument that the husband's non-self-inculpatory statements were not "collaterally neutral" does not persuade us. This court's opinion in <u>Newton</u> was the first time we used the term "collaterally neutral statement," though we noted that "[o]ur case law allowed for the admission of a statement against interest that included collaterally neutral facts" prior to the adoption of the Colorado Rules of Evidence. <u>Newton</u>, 966 P.2d at 577 (citing <u>West. Auto. Supply Co. v. Washburn</u>, 149 P.2d 804, 805–08 (Colo. 1944); <u>In re Estate of Granberry</u>, 498 P.2d 960, 962–63 (Colo. 1972)). Because this court drew extensively from Justice Kennedy's concurring opinion in <u>Williamson</u> in reaching our holding in <u>Newton</u>, we return to Justice Kennedy's logic to define a "collaterally neutral statement."

¶51 As this court explained in <u>Newton</u>, 966 P.2d at 576–77, Justice Kennedy reviewed the approaches of commentators Dean Wigmore, Dean McCormick, and Professor Jefferson regarding the admissibility of collateral statements, <u>Williamson</u>, 512 U.S. at 611–12. Justice Kennedy observed that the Advisory Committee's Note to Fed. R. Evid. 804(b)(3) referred to McCormick's treatise for guidance regarding the balancing of self-serving and disserving aspects of a declaration, and advocated an approach similar to that espoused by McCormick. See <u>id.</u> at 617–20; <u>Newton</u>, 966 P.2d at 576–77. As Justice Kennedy explained:

> [McCormick] argued for the admissibility of collateral statements of a neutral character, and for the exclusion of collateral statements of a self-serving character. For example, in the statement "John and I robbed

21

the bank," the words "John and" are neutral (save for the possibility of conspiracy charges). On the other hand, the statement "John, not I, shot the bank teller" is to some extent self-serving and therefore might be inadmissible.

Williamson, 512 U.S. at 612 (citing C. McCormick, Law of Evidence § 256, pp. 552–53 (1954)). Though Justice Kennedy's examples do not comprehensively define a "collaterally neutral statement," we agree that they appropriately distinguish between a collaterally neutral statement (e.g., "John and I robbed the bank.") and a self-serving statement (e.g., "John, not I, shot the bank teller."). Justice Kennedy drew his examples from Professor Graham's treatise, which explained that "John and I robbed a bank" is a collaterally neutral inculpatory statement: "In this example[,] the relevant material is not contained in the disserving segment ('I robbed the bank.'); instead, it is in the collateral portion ('John robbed the bank.')," which is neutral as to the declarant's interest.[7] Mark H. Graham, 30C Fed. Prac. & Proc. Evid. § 7075 n.10 (2017), Westlaw.

¶52 Nicholls claims that her husband's statements were not collaterally neutral, but Justice Kennedy's examples illustrate why her claim fails. The husband's statements here were analogous to "John and I robbed the bank," a paradigmatic collaterally neutral statement. They were not blame-shifting. As described above, the husband's description of Nicholls' involvement explained their motive for setting their house on fire with their children inside and detailed how they carried out their plans. Moreover, the husband admitted to his cellmate that he alone set the fire while Nicholls was out of the house. It is true that some of the husband's individual statements were solely about

---

[7] McCormick likewise used the term "neutral" in this context to mean "neutral as to the declarant's interest." C. McCormick, Law of Evidence § 256, p. 552 (1954)

Nicholls—e.g., that Nicholls got him started "back on [methamphetamine] again" and that she told him on the night of the fire that "[t]his is going through." But we squarely rejected in <u>Newton</u> the <u>Williamson</u> approach of "severing collaterally neutral statements from each precise self-inculpatory remark" because doing so "deprives the jury of important context" and "undervalue[s] the need for meaningful evidence in criminal cases," and because "the surgical precision called for by <u>Williamson</u> is highly artificial and nearly impossible to apply." <u>Newton</u>, 966 P.2d at 578. Taken as a whole, the husband's statements were not self-serving or blame-shifting. They were at most dually inculpatory.[8] We therefore reject Nicholls' third argument.

---

[8] We agree with the People that the husband's statements can be characterized as dually inculpatory and thus distinguished from blame-shifting statements. In <u>Stevens v. People</u>, 29 P.3d 305 (Colo. 2001), <u>overruled on other grounds by</u> <u>Fry</u>, 92 P.3d at 970, we addressed the admission of statements by a gunman hired by the defendant to kill the victim. We held that the gunman's statements were dually inculpatory and rejected the defendant's contention that they were blame-shifting:

> [The gunman] admitted in his confession that he alone shot and killed the victim. He did not minimize his involvement in the murder nor did he shift the responsibility for committing the murder to the defendant. [The gunman's] statements inculpating the defendant are closely intertwined with the self-inculpatory portions of his confession. His description of the defendant's involvement in the murder provided the police investigators with [the gunman's] motive for killing the victim and explained how [the gunman] carried out the murder. In addition, [the gunman's] explanation of how he and the defendant discussed and planned the murder not only inculpated the defendant, it also augmented his own guilt by showing that the murder was premeditated. <u>This dual inculpation distinguishes cases in which the parts of an accomplice's statement inculpating the defendant do not also inculpate the accomplice but rather tend to exculpate the accomplice by shifting the majority of the blame to the defendant</u>.

<u>Id.</u> at 315 (emphasis added).

¶53   For similar reasons, we reject Nicholls' argument that the husband's statements that Nicholls killed her second child, was a "fucking bitch" and "sick woman," and that she was so "spun out" on drugs that she did not attend the children's funerals, were inadmissible as collaterally neutral statements. As discussed above, we rejected this line-by-line approach and such a narrow definition of "statement" in <u>Newton</u>, 966 P.2d at 576–79, and therefore we decline to review separately each individual comment the husband made to his cellmate.

¶54   In sum, we conclude that the trial court did not abuse its discretion in admitting the husband's confession to his cellmate as a statement against interest under CRE 804(b)(3) as that Rule existed at the time of Nicholls' trial.

## B.   Mother's and Cellmate's Testimony About the Death of Nicholls' Second Child

¶55   Nicholls' second child died of SIDS several years before the fire and the deaths of the three children at issue here. Over Nicholls' objections, the trial court allowed Nicholls' mother to testify for the People that Nicholls cried non-stop for three days when her second child died of SIDS but did not grieve when her three children died in the fire. The trial court also allowed the cellmate to testify that the husband told him that Nicholls "killed her [second] baby" and that that child's death was ruled a SIDS death. Nicholls argues that this evidence that her second child died of SIDS was irrelevant and unfairly prejudicial.

¶56   Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less

24

probable than it would be without the evidence." CRE 401. Relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." CRE 403. Reviewing courts give great deference to trial court decisions under CRE 403 because a multitude of factors are considered in this balancing process. See Vialpando v. People, 727 P.2d 1090, 1095–96 (Colo. 1986). A reviewing court must afford the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected. People v. Rath, 44 P.3d 1033, 1043 (Colo. 2002). Absent an abuse of discretion, a trial court's ruling concerning the relative probative value and prejudicial impact of the evidence will not be disturbed on review. People v. Gibbens, 905 P.2d 604, 607 (Colo. 1995). To demonstrate an abuse of discretion, a petitioner must show that the trial court's decision was manifestly arbitrary, unreasonable, or unfair. People v. Nuanez, 973 P.2d 1260, 1263 (Colo. 1999).

### 1. Mother's Testimony

¶57 On redirect examination, the People asked Nicholls' mother if she had seen Nicholls grieve a loss before and, if so, whether it was different from her reaction to the deaths of her three children in this case. Defense counsel objected on relevance and prejudice grounds, concerned that this line of questioning would lead the jury to draw unspecified "improper inferences." The trial court inferred that defense counsel was concerned that Nicholls would be "implicat[ed] . . . in somehow causing the death" of her second child. The trial court overruled the objection on the condition that the

25

People lead the witness "so that she doesn't add anything to that with regard to thinking that [Nicholls] had some sort of responsibility" for her second child's death. The People then asked the mother about how Nicholls' reaction to her second child's death compared with her reaction in this case. Again, defense counsel objected, and the trial court overruled the objection. Nicholls' mother stated Nicholls' reactions were "[c]ompletely different. [Nicholls] was sobbing and wailing after [her second child] died. I can see her sitting there crying for days. And that was not the case at the hospital after [the three children] died" in the fire.

¶58 We conclude that the trial court did not abuse its discretion in admitting this testimony. Although the trial court made no express findings regarding relevance, we agree with the court of appeals that the testimony was relevant to show how differently Nicholls grieved the second child's death as compared to the deaths of the three child victims here. See Nicholls, slip op. at 22. This evidence supported the People's theory that Nicholls conspired to kill the children for insurance money. Moreover, the court's explanation, and specifically its direction that the People lead the witness to prevent her from suggesting that Nicholls was responsible for the child's death, indicates that the trial court properly balanced the danger of unfair prejudice (based on potential juror speculation about Nicholls' responsibility for the second child's death) with the probative value of her mother's testimony. Ascribing the maximum probative value that a reasonable fact finder might give such evidence, and the minimum unfair prejudice to be reasonably expected from its admission, we conclude that the trial court

did not abuse its discretion in allowing Nicholls' mother to testify about Nicholls' grieving.

## 2. Cellmate's Testimony

¶59　The cellmate also testified briefly about the second child's death, stating that the husband said, "Man, [Nicholls] killed her [second] baby," and later confirming on redirect that the husband told him the child's death was ruled a SIDS death.

¶60　Nicholls did not object at trial to this testimony under CRE 401 or 403 and therefore did not properly preserve this issue. Consequently, we review only for plain error. People v. Bowers, 801 P.2d 511, 519 (Colo. 1990). Under plain error review, reversal is required only if the appellate court, "after reviewing the entire record, can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." Wilson v. People, 743 P.2d 415, 420 (Colo. 1987).

¶61　We conclude that the trial court did not plainly err by admitting the cellmate's testimony about the second child's death. We agree with the court of appeals that these brief, isolated statements did not so undermine the trial's fairness as to cast serious doubt on the reliability of Nicholls' conviction. See Nicholls, slip op. at 23. The People did not rely at all on this testimony, and Nicholls' conviction was amply supported by substantial, properly admitted evidence.

## III. Conclusion

¶62　For the foregoing reasons, we affirm the judgment of the court of appeals.

27