24CA1078 Marriage of Veach 05-22-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1078
Dolores County District Court No. 17DR30001
Honorable William Young Furse, Judge

---

In re the Marriage of

Jeremy Wade Veach,

Appellant,

and

Skye Lunn Veach,

Appellee.

---

ORDER AFFIRMED

Division IV
Opinion by JUDGE FREYRE
Gomez and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 22, 2025

---

The Law Office of Jill M. Carlson, LLC, Jill M. Carlson, Hays, Kansas, for Appellant

Belcastro Law, PPLC, Dan Belcastro, Grand Junction, Colorado, for Appellee

¶ 1    Jeremy Wade Veach (father) appeals the permanent protection order (PPO) protecting his two children from him.  We affirm.

## I.    Background

¶ 2    Father and the children's mother, Skye Lynn Veach (mother), divorced in 2017.  In September 2023, mother petitioned for and obtained a temporary civil protection order (TPO) against father, with the children listed as the protected parties as victims of physical assault or threats.  The court did not hold a hearing before granting the TPO.  As grounds for the protection order, mother cited a recent incident in which father allegedly grabbed the oldest child by the neck and threw him to the ground in frustration while playing a board game with the children.  Mother also cited an incident in which father allegedly made the children run home in the dark in front of father's truck because he was not happy with the children's performance at a wrestling meet.

¶ 3    Following the issuance of the TPO, the district court held a hearing and entered the PPO against father.  The court found by a preponderance of the evidence that father had committed acts constituting grounds for entering the PPO and that, unless restrained, he would continue to commit such acts.  The PPO

1

prohibited father from having any contact with the children except for supervised parenting time two times per week for two hours per session. The PPO also awarded temporary care and control of the children to mother.

¶ 4     To further clarify the parenting time arrangement under the PPO, the district court simultaneously issued a temporary parenting time order. That order again explained that father was entitled to supervised parenting time twice per week and stated that it was not the court's intent to "indefinitely have [father] subject to supervised parenting time." Accordingly, the court set the matter for a status conference in sixty days to consider possible modifications to the PPO.

## II.     Discussion

¶ 5     Father contends that the district court erred by (1) failing to hold a statutorily mandated hearing before issuing the TPO; (2) making certain erroneous evidentiary rulings; and (3) finding that father had committed acts constituting grounds for entering the PPO. We perceive no reversible error.

## A.    Statutory Framework

¶ 6     Section 13-14-104.5, C.R.S. 2023, authorizes a court to issue a temporary or permanent civil protection order to prevent, as relevant here, assault and threatened bodily harm. § 13-14-104.5(1)(a); *Martin v. Arapahoe Cnty. Ct.*, 2016 COA 154, ¶ 16.

¶ 7     Under Colorado's criminal code, assault includes "knowingly or recklessly caus[ing] bodily injury to another person." § 18-3-204(1)(a), C.R.S. 2024; *see also* § 18-1-901(3)(c), C.R.S. 2024 (defining bodily injury as "physical pain, illness, or any impairment of physical or mental condition"); *People v. Lobato*, 530 P.2d 493, 495 (Colo. 1975) (recognizing that bodily injury "need not be of a crippling or otherwise incapacitating nature").

¶ 8     "A motion for a temporary civil protection order shall be set for hearing at the earliest possible time." § 13-14-104.5(4); *see Martin*, ¶ 18. If "after hearing the evidence" the court is "fully satisfied therein that sufficient cause exists," it may issue a TPO and a citation "to the respondent commanding [them] to appear before the court . . . to show cause, if any, why said temporary civil protection order should not be made permanent." § 13-14-104.5(8).

3

¶ 9     At the PPO hearing, the court "shall examine the record and the evidence" to decide whether to make the TPO permanent or to enter a PPO on different terms.  § 13-14-106(1)(a), C.R.S. 2024; *see also Martin*, ¶ 20.  To issue a PPO, the court must find by a preponderance of the evidence that (1) the person to be restrained "has committed acts constituting grounds for the issuance of a civil protection order" and (2) "unless restrained the [person] will continue to commit the acts or acts designed to intimidate or retaliate against the protected person."  § 13-14-106(1)(a).  The grounds for issuing a civil protection order are those set forth in section 13-14-104.5(1)(a).  *See Martin*, ¶ 20.

## B.    TPO Hearing

¶ 10    As best as we can discern, father contends that the PPO is flawed because the district court failed to hold a hearing before granting the TPO.  But we conclude that any error was harmless.

### 1.    Standard of Review

¶ 11    Statutory construction and application present questions of law that we review de novo.  *Hickerson v. Vessels*, 2014 CO 2, ¶ 10.  If we identify an error, we review for harmlessness and will reverse only if the error affected a party's substantial rights.  C.R.C.P. 61;

*People in Interest of R.D.*, 2012 COA 35, ¶ 25.  "An error affects a substantial right only if 'it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself.'"  *Bly v. Story*, 241 P.3d 529, 535 (Colo. 2010) (citation omitted).

### 2.    Any Error Was Harmless

Father contends, and mother does not dispute, that the district court failed to hold any sort of a hearing before issuing the TPO.  Father thus suggests that, because the TPO was procedurally flawed, the PPO is invalid.  But even though a TPO hearing was not held, we conclude that any error is harmless.

We so conclude because "a temporary protection order issued under section 13-14-104.5 is not the . . . court's 'final decision' on a plaintiff's request for a civil protection order."  *Martin*, ¶ 22.  Rather, the procedure governing TPOs "merely permits a court to make an initial determination as to whether an imminent danger exists to the person[s] seeking protection, and to issue a temporary protection order based on that finding."  *Id.*; *see* § 13-14-104.5.  Conversely, section 13-14-106(1)(a) "contemplates that a final ruling regarding the plaintiff's entitlement to a civil protection order,

5

and the terms of the order, will be made at the permanent order hearing." *Martin*, ¶ 22.

¶ 14    Additionally, while section 13-14-104.5 plainly requires that a hearing be set prior to granting a TPO, the statute permits the hearing to be conducted ex parte. § 13-14-104.5(4).  Because father had no right to be present at any TPO hearing, we fail to see, and he has failed to articulate, how he was prejudiced by the court not holding a TPO hearing.

¶ 15    Finally, the district court held a PPO hearing during which it weighed the evidence and evaluated the credibility of the witnesses. *See Parocha v. Parocha*, 2018 CO 41, ¶ 16 (It is the district court's "prerogative to weigh and evaluate the parties' credibility."); *see also Martin*, ¶ 23 ("The permanent protection order hearing gives the respondent a prompt opportunity to challenge the court's initial ex parte findings and raise any jurisdictional or procedural deficiencies.").  Because father had the benefit of cross-examining mother's witnesses and presenting his own evidence during a hearing before the PPO was granted, we conclude that any failure to hold a hearing before granting the TPO was harmless.  *See Martin*, ¶ 23 ("[T]he [PPO] hearing and ordinary appellate procedures provide

adequate alternative remedies for challenging a temporary restraining order.").

## C. Evidentiary Rulings

¶ 16 Father next contends that the district court abused its discretion in making certain evidentiary rulings at the PPO hearing. To the extent that the district court erred, we conclude that any error was harmless.

### 1. Standard of Review

¶ 17 We review a trial court's ruling regarding the admissibility of evidence for an abuse of discretion. *Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 29. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or is based on an erroneous understanding or application of the law. *Id.*

### 2. Mother's Reputation for Truthfulness

¶ 18 We first consider and reject father's assertion that the district court abused its discretion when it prohibited one of father's witnesses, who was mother's uncle, from testifying concerning mother's reputation for truthfulness.

¶ 19 In prohibiting the witness from testifying about mother's reputation for truthfulness, the district court reasoned that mother

had not testified in the protection order proceedings and therefore her character and reputation for truthfulness were not at issue.

¶ 20     CRE 405(a) allows for "testimony as to reputation" in "all cases in which evidence of character or a trait of character of a person is admissible." However, CRE 404(a) provides that "[e]vidence of a person's character or a trait of that person's character" is generally not admissible, subject to certain enumerated exceptions, one of which is "[e]vidence of the character of a witness." CRE 608 then provides certain limitations on attacking or supporting the "credibility of a witness . . . by evidence in the form of opinion or reputation." But here, mother did not testify as a witness in the protection order proceedings, and thus we perceive no error on the part of the district court when it excluded father's witness from testifying as to mother's reputation for truthfulness.

### 3.     Hearsay

¶ 21     Father next challenges the district court's ruling permitting the oldest child's teacher to testify as to the child's disclosure of the neck-grabbing and truck incidents. When mother's attorney asked about the child's description of those incidents, father objected based on hearsay. But after the teacher testified that the child

appeared to be very upset at the time that he disclosed the incidents, the district court overruled father's objection, holding that the testimony fell under the excited utterance exception in CRE 803(2).

¶ 22    Hearsay is generally inadmissible, subject to certain enumerated exceptions.  CRE 802.  One of those is the excited utterance exception, which excludes "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" from the general prohibition on the admission of hearsay.  CRE 803(2).

¶ 23    Under CRE 803(2), the statement to be admitted must meet the following requirements:

> (1) the event was sufficiently startling to render normal reflective thought processes of the observer inoperative; (2) the statement was a spontaneous reaction to the event; and
> (3) direct or circumstantial evidence exists to allow the jury to infer that the declarant had the opportunity to observe the startling event.

*People v. Vanderpauye*, 2023 CO 42, ¶ 42 (citation omitted).  In considering the second requirement, the court must also weigh

> the lapse of time between the startling event or condition and the . . . statement; whether the statement was a response to an inquiry;

9

> whether the statement is accompanied by outward signs of excitement or emotional distress; and the declarant's choice of words to describe the startling event or condition.

*Id.* at ¶ 45 (quoting *Compan v. People*, 121 P.3d 876, 882 (Colo. 2005)), *overruled on other grounds by Nicholls v. People*, 2017 CO 71, ¶ 30. Moreover, "'[t]he most important of the many factors' related to whether the observer reacted spontaneously or engaged in reflective thought 'is the temporal element.'" *Id.* at ¶ 47 (quoting 2 Kenneth S. Broun et al., *McCormick on Evidence* § 272 (Robert P. Mosteller ed., 8th ed.)).

¶ 24     Here, we share father's concern that the teacher's testimony regarding the oldest child's description of the incidents did not qualify as an excited utterance. Specifically, the teacher testified that the child did not state when the incidents had occurred, meaning that the court was unable to assess whether the child's statements were indeed a spontaneous reaction to very recent events. *See id.* at ¶¶ 42, 47. Likewise, the teacher did not testify that the child was upset because of the incidents but instead recounted that the child "was upset because he had to end a friendship because he was told to do so by his father." Thus, it

10

appears that the child's statements were not a spontaneous reaction to the incidents but were instead made while he was upset about a different matter. *See id.* at ¶ 42.

¶ 25     However, even if the district court erred in admitting the teacher's testimony as to the child's statements, we conclude that any error was harmless because the teacher's testimony was merely cumulative of other admitted evidence, so the error does not warrant reversal. *See In re Marriage of Adamson*, 626 P.2d 739, 741 (Colo. App. 1981).

¶ 26     Here, an intake caseworker for child protective services and the children's therapist were both qualified as expert witnesses and testified at the hearing. Without objection from father, the caseworker testified as to the oldest child's description of the neck-grabbing and truck incidents. And without any hearsay objection from father, the caseworker's intake report, the therapist's trauma assessments, and a police report were admitted as exhibits.[1] Those documents in turn summarized the children's

---

[1] The record reflects that father initially objected to the admission of the police report, but he then withdrew his objection. It further shows that father's objection to the trauma assessments based on reliability was overruled, and he does not challenge that ruling here.

11

descriptions of the incidents forming the basis of the PPO. Thus, because substantial, cumulative evidence concerning the incidents was admitted, we decline to reverse the PPO even if the district court erred by allowing the teacher to testify as to hearsay statements. *See id.*

¶ 27 Finally, we reject father's contention that the district court abused its discretion by excluding certain hearsay testimony that one of his witnesses had offered to discredit the child's report regarding the truck incident. As mother correctly points out, the district court in fact *admitted* the statements that father has claimed were improperly excluded.

### D. Evidentiary Support for the PPO

¶ 28 Father also contends that the district court improperly placed the burden on him to refute the allegations in mother's petition, and that there was otherwise insufficient evidence to support the issuance of the PPO. We are not persuaded.

### 1. Standard of Review

¶ 29 We review a trial court's factual findings for clear error. *In re Marriage of Pawelec*, 2024 COA 107, ¶ 55. A finding of fact is clearly erroneous if there is no support for it in the record. *In re*

*Marriage of Evans*, 2021 COA 141, ¶ 39. It is for the trial court to determine credibility of the witnesses and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom. *In re Marriage of Thorburn*, 2022 COA 80, ¶ 49; *see also In re Marriage of Amich*, 192 P.3d 422, 424 (Colo. App. 2007) ("The trial court can believe all, part, or none of a witness's testimony, even if uncontroverted, and its resolution of conflicting evidence is binding on review.").

### 2. The Record Supports the Court's Findings

¶ 30 Based on the incidents between father and the children, the district court found by a preponderance of the evidence that father committed acts constituting grounds for a protection order, and that unless restrained, he would continue to commit such acts. The court was persuaded by the fact that the children had given similar statements about the incidents to multiple adults. And the court otherwise found that father's former girlfriend, who testified in support of father, was not "all that compelling of a witness."

¶ 31 From the outset, we reject father's contention that the district court applied the wrong legal standard when making its findings in support of the PPO by placing the burden of proof on him instead of

mother. While the court concluded that the allegations against father were largely "unrefuted," the court emphasized in response to a question from father's counsel that it had found by "a preponderance of the evidence" that the PPO was warranted. Thus, we are satisfied that the court did not simply accept the allegations in the petition at face value, but instead, the court was persuaded by the evidence introduced by mother.

¶ 32    For similar reasons, we reject father's contention that the district court applied the wrong legal standard or otherwise made inconsistent findings when it explained that, although it was issuing the PPO, it was "not finding that [father] is an unfit parent." The district court unambiguously indicated that it had found, by a preponderance of the evidence, that the requirements for issuing a PPO under section 13-14-106 had been met, and father has not cited any legal authority suggesting that a finding of parental unfitness was required before issuing a PPO.

¶ 33    Moreover, we disagree with father's assertion that the district court was confused about whether it was applying the protection order statute or the standards governing the children's best interests under the Uniform Dissolution of Marriage Act. *See*

§ 14-10-124(1.5)(a), C.R.S. 2024.  In terms of the court's statement that it also had jurisdiction to restrict or modify parenting time in the children's best interests, we construe that statement to be part of an inquiry as to the circumstances under which the court may modify the PPO in the children's best interests in the future.  We otherwise express no opinion on that inquiry.

¶ 34     Finally, contrary to father's assertions, we conclude that there was sufficient evidence to support the issuance of the PPO.  Even without considering the testimony of the oldest child's teacher, both the caseworker and the therapist confirmed the children's descriptions of the neck-grabbing and truck incidents.  The caseworker specifically described how the oldest child reported that father became upset while playing a board game with the children and "grabbed [the oldest child] by the back of his neck and threw him on the ground."  The caseworker confirmed that the oldest child was traumatized by the incident.

¶ 35     Likewise, the therapist's trauma assessments explained that both children considered the truck incident to be a recent traumatic event and described the incident as a punishment implemented by father for the children's poor performance during wrestling practice.

The trauma assessments described how, during that incident, father stopped the truck multiple miles away from home and made the children run all the way home in front of the truck, with father driving the truck very close behind the children if they slowed down. Accordingly, the therapist testified that the children felt unsafe around father, and both the caseworker and the therapist recommended that, going forward, father should only interact with the children in a supervised environment. And while father contends that the testimony of both the caseworker and therapist was largely based on hearsay statements of the children, father failed to object to that testimony on that basis. *See Am. Fam. Mut. Ins. Co. v. DeWitt*, 218 P.3d 318, 325 (Colo. 2009) ("In order to properly preserve an objection to evidence admitted at trial, a timely and specific objection must appear in the trial court record.").

¶ 36 Likewise, while father directs us to other evidence that he contends weighs against the issuance of the PPO, including mother's course of conduct during past parenting disputes and the testimony of his former girlfriend, we may not reweigh the evidence in father's favor given that the district court's findings enjoy record support. *See In re Marriage of Nelson*, 2012 COA 205, ¶ 35 ("[Even

where] there is evidence in the record that could have supported a different conclusion, we will not substitute our judgment for that of the district court."). And in terms of father's assertion that there was no evidence that he would continue to engage in future acts supporting a PPO, we disagree given that the PPO was based on multiple incidents and the evidence indicated that the children continued to feel unsafe around father.

¶ 37    In sum, given the evidence presented, we conclude that the record supports the district court's finding that father had committed acts constituting grounds for issuance of a civil protection order and unless restrained, would continue to commit such acts. *See* § 13-14-106(1)(a). Specifically, given both the neck-grabbing and truck incidents, we conclude that sufficient evidence was presented to support a finding that the PPO was necessary to prevent assaults on, and threatened bodily harm against, the children. *See* § 13-14-104.5(1)(a); § 18-3-204(1)(a).

### III.    Disposition

¶ 38    The order is affirmed.

JUDGE GOMEZ and JUDGE MEIRINK concur.