**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Willie BOYKINS, Defendant–Appellant.**

No. 03CA2278.

Colorado Court of Appeals,
Div. II.

Oct. 20, 2005.

Rehearing Denied Jan. 12, 2006.

Certiorari Denied July 17, 2006.*

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2005.

* Justice EID does not participate.

John W. Suthers, Attorney General, Amy Elizabeth Richards, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Ellen K. Eggleston, Deputy State Public Defender, Lisa Weisz, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

ROTHENBERG, J.

Defendant, Willie Boykins, appeals the judgment of conviction entered on a jury verdict finding him guilty of conspiracy to possess a schedule II controlled substance, § 18–18–405, C.R.S.2005. We affirm.

## I. Background

Police officers in Grand Junction arrested a passenger on a bus coming from Los Angeles for possession of a schedule II controlled substance, PCP. The passenger told the officers that the PCP belonged to defendant, who was traveling on the same bus using a false name, "Mike"; that he and defendant had flown from Chicago to Los Angeles the day before, where defendant negotiated the drug purchase; and that they were returning to Chicago together. The passenger described defendant as an African–American male, six feet tall, weighing 260 pounds, who was sitting a few rows in front of him on the bus.

Based on this information, the officers contacted the police department in Frisco to stop the bus and detain defendant.

Frisco officers stopped the bus and asked defendant to exit the bus and speak with them. The officers and defendant went into the bus terminal lobby, where they asked defendant if they could look at his bus ticket and in his duffel bag. The bus ticket was issued to a Michael Johnson, and the officers found a post office receipt in defendant's duffel bag. Defendant was arrested and convicted of the above offense.

## II. Motion to Suppress

■ Defendant first contends the trial court erred in denying his motion to suppress the bus ticket and postal money order receipt taken from him by the Frisco officers. He maintains that removing him from the bus and questioning him in Frisco was a seizure unsupported by probable cause, and that the evidence taken from him was the fruit of that unlawful seizure. We disagree.

■ In reviewing a suppression ruling, we defer to the trial court's findings of fact, which will not be overturned if supported by competent evidence in the record. However, we apply a de novo standard of review to ascertain whether the trial court's legal conclusions are supported by sufficient evidence and whether the court applied the correct legal standard. *People v. Syrie*, 101 P.3d 219 (Colo.2004).

■ Colorado recognizes three categories of police-citizen encounters: (1) arrests, (2) investigatory stops, and (3) consensual encounters. An arrest must be justified by probable cause, while an investigatory stop requires only particularized suspicion. Consensual encounters are not afforded constitutional protections. *People v. Salazar*, 964 P.2d 502 (Colo.1998).

■ "Probable cause to arrest exists when the objective facts and circumstances available to a reasonably cautious officer warrant the belief that an offense has been or is being committed by the person arrested." *People v. Alexander*, 797 P.2d 1250, 1253–54 (Colo.1990)(quoting *People v. Freeman*, 668 P.2d 1371, 1377 (Colo.1983)).

Here, the record supports the trial court's findings that the passenger had identified defendant by his name and his alias, had told the officers defendant had negotiated the drug deal for the PCP, had said he and defendant were en route to Chicago, and had described defendant's physical characteristics and location on the bus.

■ Given these facts, we agree with the trial court that the officers had reasonable suspicion to stop the bus to investigate further, to detain defendant, and to request permission to see his bus ticket. Once the officers learned the bus ticket was issued to a Michael Johnson, they had probable cause to arrest defendant. Accordingly, we conclude the court did not err in denying defendant's motion to suppress evidence.

## III. Jurors' Difficulty in Observing Witnesses and Defendant

Defendant next contends the trial court took inadequate remedial actions to safeguard his right of confrontation after some jurors expressed difficulties observing defendant and the witnesses during trial, and he argues that the trial court's inaction resulted in structural error. We agree the trial court's response was inadequate but conclude reversal is not warranted.

### A. Rights under Confrontation Clause

■ The Confrontation Clauses of the United States and Colorado Constitutions

guarantee all defendants the right to confront and cross-examine witnesses. U.S. Const. amend. VI; Colo. Const. art. II, § 16. The Confrontation Clauses ensure that testimony offered against an accused is reliable. *People v. Fry,* 92 P.3d 970 (Colo.2004). Testimony is presumed to be more reliable when it is given under oath at trial where the witnesses are subject to cross-examination and the jury can observe each witness's demeanor. *People v. Fry, supra.*

In *Coy v. Iowa,* 487 U.S. 1012, 1016, 108 S.Ct. 2798, 2801, 101 L.Ed.2d 857 (1988), the Court emphasized that the right of confrontation "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact."

Two years later, in *Maryland v. Craig,* 497 U.S. 836, 851, 110 S.Ct. 3157, 3166, 111 L.Ed.2d 666 (1990), the Court upheld a Maryland statutory procedure which prevented a child witness from seeing the defendant as the witness testified at trial. However, in doing so, the Court found it "significant" that:

> Maryland's procedure preserves all of the other elements of the confrontation right: The child witness must be competent to testify and must testify under oath; the defendant retains full opportunity for contemporaneous cross-examination; *and the judge, jury, and defendant are able to view (albeit by video monitor) the demeanor (and body) of the witness as he or she testifies.* Although we are mindful of the many subtle effects face-to-face confrontation may have on an adversary criminal proceeding, the presence of these other elements of confrontation—oath, cross-examination, *and observation of the witness' demeanor*—adequately ensures that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony. These safeguards of reliability and adversariness render the use of such a procedure a far cry from the undisputed prohibition of the Confrontation Clause: trial by ex parte affidavit or inquisition.

*Maryland v. Craig,* 497 U.S. at 851, 110 S.Ct. at 3166 (emphasis added; citations omitted).

■ Later, in *Riggins v. Nevada,* 504 U.S. 127, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992), in his concurring opinion Justice Kennedy explained the importance of viewing the demeanor of the accused:

> *It is a fundamental assumption of the adversary system that the trier of fact observes the accused throughout the trial, while the accused is either on the stand or sitting at the defense table.* This assumption derives from the right to be present at trial, which in turn derives from the right to testify and rights under the Confrontation Clause. At all stages of the proceedings, the defendant's behavior, manner, facial expressions, and emotional responses, or their absence, combine to make an overall impression on the trier of fact, an impression that can have a powerful influence on the outcome of the trial.

*Riggins v. Nevada, supra,* 504 U.S. at 142, 112 S.Ct. at 1819 (emphasis added; citations omitted); *see Thomas v. People,* 803 P.2d 144 (Colo.1990); *People v. McClure,* 779 P.2d 864, 866 (Colo.1989)(quoting *People v. Dement,* 661 P.2d 675, 680 (Colo.1983): "The confrontation right and hearsay rules stem from the same roots and are designed to protect similar interests based on the premise that testimony is much more reliable when given under oath at trial, *where the declarant is subject to cross-examination and the jury may observe his demeanor.*" (emphasis added) ); *People v. Welsh,* 58 P.3d 1065, 1073–74 (Colo.App.2002)("The purposes of the right of confrontation are to prevent conviction by affidavit, to permit cross-examination as a tool for testing the witness' statements and recollections, and *to allow the jury to judge the demeanor of the witness and thereby better assess credibility.*" (emphasis added) ), aff'd, 80 P.3d 296 (Colo.2003).

■ Thus, the right to cross-examine witnesses is an indispensable component of the Confrontation Clause, and includes the right of an accused to have the jury observe his or her demeanor, as well as that of the witnesses, during trial. *But see Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970)( where the defendant persisted in disruptive conduct, he lost his constitutional right to be present throughout his trial, and

his removal from courtroom and proceeding with trial in his absence until he promised to conduct himself properly held not to be unconstitutional).

■ Here, the jurors notified the court on the second day of trial that some of them had difficulty observing defendant and the prosecution's first two witnesses. There is no explanation why they were having this difficulty, but it is undisputed that the ability of some jurors to see and evaluate defendant and the witnesses' demeanor was impaired for part of the trial. This was a violation of defendant's right to confrontation.

■ Defendant contends the trial court's response was inadequate because, after learning of the jurors' difficulty, the court did not inquire further to determine the nature of the problem. We agree the court should have informed the jury that it was their duty to observe all of the witnesses at trial, and that it was the court's duty to take all necessary steps to make sure they could do so. Similarly, they also needed to be able to observe defendant.

In this case, the court instructed the jurors that they could move to the front row of the jury box to gain a better view of the witnesses. When no juror responded, the court assumed the problem was solved and also stated: "[T]hat's really the best I can do. We have 16 seats in the jury box and only 12 jurors so we have some flexibility. Not ... a lot."

However, the fact that the jury did not respond did not necessarily mean the problem was solved. Jurors may be reticent to complain in open court, or fearful that they will inconvenience the court or delay the proceedings. Thus, the court should have inquired further and have gotten an affirmative response that each juror could see. The court's above-quoted statement suggested that nothing further could be done and may have inhibited jurors from complaining further.

■ Contrary to the statement by the trial court, the court has considerable flexibility in fulfilling its duty to ensure that all jurors can see the witnesses and the defendant during the entire trial. This may mean moving the jurors within the jury box or, if necessary, repositioning them outside the jury box. The podium should also be positioned so that it does not block the view of the jurors. Similarly, the court may move the witnesses and the defendant so that each member of the jury is able to see them. We conclude the trial court's response was inadequate.

### B. Structural vs. Trial Error

■ Before we address defendant's contention that he is entitled to a new trial, however, we must determine whether the jurors' difficulty observing his and the witnesses' demeanor constituted structural or trial error. We conclude this type of error is trial error.

■ A violation of the Confrontation Clause is a constitutional error. *People v. Fry, supra.* There are two types of constitutional error: (1) structural error, which requires automatic reversal whether or not the defendant objected at trial, and (2) trial error, which occurs "during the presentation of the case to the jury and ... may therefore be quantitatively assessed in the context of other evidence presented." *Blecha v. People,* 962 P.2d 931, 942 (Colo.1998)(quoting *Arizona v. Fulminante,* 499 U.S. 279, 307–08, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302 (1991)).

■ Structural error is a defect affecting the structure in which the trial proceeds. *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *Arizona v. Fulminante, supra.* Structural errors infect the entire trial process, *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *Bogdanov v. People,* 941 P.2d 247, amended, 955 P.2d 997 (Colo.1997), and necessarily render a trial fundamentally unfair. *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986).

▪ ■ Errors that pervade the entire proceeding affect the entire trial process. *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)(conflict of interest in representation throughout entire proceeding). We note that the duration of the error throughout the trial is not determina-

tive of whether the error is structural. *See White v. Maryland,* 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963)(absence of counsel from arraignment proceeding affected entire trial because defenses not asserted were lost). However, whether the error occurs throughout the trial or during a single critical stage, the dispositive factor remains whether or not the error can be quantified. *Key v. People,* 865 P.2d 822, 828 (Colo. 1994)(Scott, J., specially concurring).

■ Where defendant has counsel and an impartial judge, there is a strong presumption that errors are not structural. *United States v. Dowlin,* 408 F.3d 647 (10th Cir. 2005); *People v. Geisendorfer,* 991 P.2d 308 (Colo.App.1999).

Structural errors are found only in a limited class of cases. *Johnson v. United States, supra,* (citing *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)(a total deprivation of the right to counsel); *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927)(lack of impartial trial judge); *Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986)(unlawful exclusion of grand jurors of defendant's race); *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984)(the right to self-representation at trial); *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)(the right to a public trial); *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (erroneous reasonable doubt instruction to jury)).

Trial errors span a broad range of cases, and the Supreme Court has recognized that most errors do not automatically render a trial unfair and can be harmless. *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). In *Arizona v. Fulminante, supra,* the Court enumerated the wide variety of constitutional errors subject to harmless error analysis. They include improper admission of an involuntary confession, *Arizona v. Fulminante, supra;* overbroad jury instructions at the sentencing stage of a capital case, *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990); improper admission of evidence at the sentencing stage of a capital case, *Satterwhite v. Texas,* 486 U.S. 249, 108 S.Ct.

1792, 100 L.Ed.2d 284 (1988); jury instructions containing erroneous conclusive or rebuttable presumptions, *Rose v. Clark, supra;* erroneous exclusion of a defendant's testimony regarding the circumstances of a confession, *Crane v. Kentucky,* 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986); improper restriction on a defendant's right to cross-examine witnesses for bias, *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); denial of a defendant's right to be present at trial, *Rushen v. Spain,* 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983); improper comment on a defendant's silence at trial, *United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); improper prohibition on the provision of a lesser included offense instruction in a capital case, *Hopper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982); failure to instruct the jury on the presumption of innocence, *Kentucky v. Whorton,* 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979); improper admission of identification evidence, *Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); erroneous admission of an out-of-court statement of a nontestifying codefendant, *Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); improper admission of a confession made to an undercover officer, *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); admission of evidence obtained in violation of the Fourth Amendment, *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); and improper denial of counsel at a preliminary hearing, *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970).

■ The common thread in harmless error cases is that the error can be quantitatively assessed in the context of other evidence presented to determine whether the error was harmless beyond a reasonable doubt. *Arizona v. Fulminante, supra.*

We have found no case with facts identical to those presented here. However, in *United States v. Olano,* 62 F.3d 1180 (9th Cir. 1995), the court excused a juror, who became ill during the proceedings, for an afternoon session of testimony. The juror read a transcript of the testimony he missed, and had a

limited opportunity to evaluate the witness' demeanor when he watched the witness' continued testimony the following day. The court held that the juror's absence during part of the trial did not qualify as a structural defect and had a negligible impact on his ability to evaluate the merits of the case. *United States v. Olano, supra.*

If structural error does not exist where jurors are absent from portions of a trial, we discern no structural error where, as here, jurors have difficulty seeing the witness and the defendant for a portion of the proceedings. We therefore conclude the error alleged constituted trial error.

### C. Plain Error Analysis

■ Having determined that the error is trial error, we next address whether the jurors' difficulty in observing the witnesses and defendant during a portion of the trial requires reversal. Under these circumstances, we conclude it does not.

■ Trial errors of constitutional magnitude are compatible with both harmless error and plain error analysis. *People v. Miller,* 113 P.3d 743 (Colo.2005). Where, as here, the defendant does not preserve the error by objecting at trial, only the plain error standard applies. *People v. Miller, supra; see* Crim. P. 52(b).

■ Reversal under this standard requires (1) error, (2) that is plain, (3) that affects the substantial rights of the defendant. *People v. Petschow,* 119 P.3d 495 (Colo.App.2004). Error is plain when it is "obvious, substantial, and grave." *Moore v. People,* 925 P.2d 264, 268 (Colo.1996). Plain error requires reversal if, after a review of the entire record, a court can conclude with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt as to the reliability of the conviction. *Moore v. People, supra.* In review for plain error, the defendant has the burden of persuasion with respect to prejudice. *United States v. Olano, supra.*

Here, the record is sparse and simply reflects that some jurors experienced "difficulty" seeing the witnesses and defendant during a portion of the trial. We agree with defendant that the trial court had a duty at the outset of the trial to make sure all jurors could see and hear the proceedings, and that when the problem was brought to its attention, the court had a duty to ensure that the problem was solved. We further agree its response was inadequate.

Nevertheless, because the record here shows only a partial inability to see and defense counsel made no further request of the court, we conclude the inability of the jurors continuously to evaluate the demeanor of the witness does not constitute plain error. Accordingly, the trial court's failure to take additional measures to make certain the jurors were able to observe the witnesses and defendant during the trial does not require reversal. *See United States v. Olano, supra; cf. United States v. Dempsey,* 830 F.2d 1084 (10th Cir.1987)(deaf juror's inability to continuously evaluate demeanor of witnesses due to use of interpreter did not impair ability to perceive and evaluate evidence).

If the record suggested the jurors were unable to see the witnesses or defendant for a significant period of time during the trial, we might reach a different result.

### IV. Hearsay Documents

Defendant next contends the trial court abused its discretion in admitting various documents into evidence because they contained hearsay and lacked a proper foundation. We disagree.

■ Trial courts have considerable discretion in determining the admissibility of evidence, and their evidentiary determinations will not be disturbed on appeal absent an abuse of discretion. *People v. Ibarra,* 849 P.2d 33 (Colo.1993). An abuse of discretion occurs only when the trial court's evidentiary determination is arbitrary, unreasonable, or unfair. *People v. James,* 117 P.3d 91 (Colo. App.2004).

■ Hearsay is a statement made by someone other than the declarant offered for the truth of the matter asserted. *People v. Hinojos–Mendoza,* 140 P.3d 30, 2005 WL 2561391 (Colo.App. No. 03CA0645, July 28, 2005). An out-of-court statement not offered

for its truth, if relevant, is admissible as nonhearsay evidence. *People v. Scearce*, 87 P.3d 228 (Colo.App.2003).

Relevant evidence is any evidence tending to make the existence of a fact more or less probable. CRE 401. Trial courts have broad discretion in making relevance determinations. *Medina v. People*, 114 P.3d 845 (Colo.2005).

Not all hearsay violations implicate the Confrontation Clause. *See People v. Hinojos–Mendoza, supra.* However, where there is a Confrontation Clause violation, it is subject to constitutional harmless error analysis if the error was properly preserved by objection at trial and reversal is required unless the error was harmless beyond a reasonable doubt. *People v. Harris*, 43 P.3d 221 (Colo.2002).

### A. Defendant's Hearsay Documents

In overruling defendant's objections to admission of his bus ticket and the postal receipt, the court found that these documents were not offered for the truth of the information contained in them. The court further found the bus ticket was relevant to establish that defendant had boarded the bus in Los Angeles, and the postal receipt was relevant to establish that he had been in Chicago.

In light of the passenger's testimony describing his travel with defendant from Chicago, defendant's role in the drug buy, and their contemplated return to Chicago with the PCP, we conclude any error by the court in admitting defendant's bus ticket and the postal money order receipt was harmless beyond a reasonable doubt. In so concluding, we do not decide whether there was a Confrontation Clause violation in this case.

### B. Passenger's Hearsay Documents

When the prosecution sought admission of the passenger's baggage claim ticket and boarding pass, defendant objected that the passenger's baggage claim ticket and boarding pass contained hearsay. However, the passenger testified, based on personal knowledge, regarding the information contained in both his boarding pass and his baggage claim ticket. We again conclude

any error was harmless beyond a reasonable doubt, but again, we do not decide whether there was a Confrontation Clause violation in this case.

### V. Prior Acts

Defendant next contends the court abused its discretion in admitting evidence of his prior acts. We disagree.

A trial court has substantial discretion in determining the admissibility of prior acts evidence, and its determination will not be disturbed on appeal absent an abuse of discretion. *People v. Cook*, 22 P.3d 947 (Colo.App.2000). A trial court abuses its discretion in admitting evidence of prior acts if the logical relevance of the evidence depends on the inference that the defendant acted in conformity with bad character. *People v. Cooper*, 104 P.3d 307 (Colo.App.2004).

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity with that character. *People v. Cooper, supra.* However, such evidence is admissible for other purposes, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. CRE 404(b); *People v. Spoto*, 795 P.2d 1314 (Colo. 1990).

We apply a plain error standard of review where the defendant fails to object to the admission of evidence at trial. *See People v. Seacrist*, 874 P.2d 438 (Colo.App.1993).

Here, the passenger testified without objection that he and defendant had taken an earlier trip—flying to Los Angeles and returning by bus to Chicago—two weeks before their arrests in this case. A Grand Junction officer also testified that an arrest for PCP had occurred at the time of the earlier trip. This time defendant objected, and the court disallowed further questioning concerning the earlier arrest for PCP. Later, in closing argument, the prosecution was allowed to argue, again over defendant's objection, that the similar trip by the passenger and defendant was evidence of their conspiracy to possess PCP.

In *People v. Geller,* 189 Colo. 338, 540 P.2d 334 (1975), the defendant was convicted of conspiracy to dispense a dangerous drug and possession with intent to dispense. He contended he was denied a fair trial by the introduction of testimony relating to certain conversations and transactions which occurred in early 1973. He maintained that the testimonial evidence in issue was prejudicial and remote because his arrest took place in April 1973. The testimony in issue related to conversations between an undercover agent and the defendant and between a co-conspirator and the same undercover agent. The conversations were primarily directed toward arranging drug transactions and, in at least one instance, in January, actually resulted in the transfer of illegal drugs to the agent.

There, as here, the defendant argued that these conversations and transactions were criminal acts, separate and distinct from the crime for which he was charged (possession of a dangerous drug with intent to dispense), and that he was not afforded the procedural protections outlined in *Stull v. People,* 140 Colo. 278, 344 P.2d 455 (1959). *See* CRE 404(b).

The supreme court rejected defendant's argument and stated:

> [T]he evidence of the conversations and transactions, far from being wholly independent of the crime charged, were "an integral part and parcel of the total picture" which surrounded the final drug transaction on April 25, 1973. The facts of which the defendant complains were directly connected to the chain of events leading to the act charged in the information, and, as such, were admissible even though the testimony which outlines the criminal transaction includes the commission of other crimes. The evidence tended to show a continuing plan, scheme, and intent on the part of the co-conspirators to deal in illicit drugs with the undercover agent over a period of time which extended from January 1973 to the date of the defendant's arrest.

*People v. Geller, supra,* 189 Colo. at 341, 540 P.2d at 336 (citations omitted).

In this case, defendant was convicted of conspiracy to possess a controlled substance, and we similarly conclude the testimony by the passenger regarding an earlier plane and bus trip does not describe activity wholly independent of the crime charged. Rather, it was "an integral part and parcel of the total picture which surrounded the final drug transaction." *People v. Geller, supra,* 189 Colo. at 341, 540 P.2d at 336.

Accordingly, we conclude there was no violation of CRE 404(b) and no error in admitting the evidence, plain or otherwise.

█ Nor do we discern reversible error in the officer's testimony concerning the earlier PCP arrest. The officer did not testify that the passenger or defendant had been arrested, the court stopped this line of questioning when defendant objected, and defendant did not request a curative instruction. *See People v. Ned,* 923 P.2d 271 (Colo.App.1996)(trial court's failure to give limiting instruction did not amount to reversible error where defendant failed to request one).

Finally, the trial court did not err in overruling defendant's objection to the prosecutor's closing argument about the prior trip, because the passenger's testimony about that trip was admissible. *See People v. Geller, supra.*

Accordingly, we conclude the trial court did not abuse its discretion in admitting evidence of defendant's prior acts.

Judgment affirmed.

Judge DAILEY and Judge LOEB concur.