23CA1483 Peo v Graciano 02-26-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1483
Adams County District Court No. 21CR3135
Honorable Jeffrey Smith, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Ricardo Graciano,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE FREYRE
Brown and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 26, 2026

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Christina Van Wagenen,
Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Ricardo Graciano, appeals his conviction of felony menacing.  We affirm.

## I.     Background

¶ 2     According to the trial evidence, Graciano encountered his estranged half-brother, Desiderio Flores, at a convenience store.  As Flores was leaving the store and Graciano was entering, the two recognized each other.  Before Flores could get out the door, Graciano shoved him, prompting Flores to go back into the convenience store and walk toward Graciano in a series of aggressive stutter steps.  Graciano then removed a knife from his belt and held it at his side while the two men continued to exchange words.  Surveillance footage showed Flores backing out of the store's entrance.

¶ 3     Once outside, the two men continued to yell at each other.  Graciano and Flores drew nearer to each other and continued to argue as if "getting ready to fight."  Flores then backed away and got into his car while Graciano continued to "hoot[] and holler[]" by the gas pumps.

¶ 4     Flores's wife, who was sitting in the car, called 911 and told the operator that her brother-in-law had just pulled a knife on her

husband.  Graciano was arrested and charged with felony menacing.

¶ 5     On appeal, Graciano argues that (1) the trial court erred by failing to suppress a statement he made to police during his arrest and transport because it was the product of a custodial interrogation; (2) the trial court violated his constitutional rights to confrontation and a fair trial when one of the jurors was unable to hear a portion of Flores's cross-examination; (3) the prosecution shifted the burden of proof by arguing in closing that the jury should "demand" more evidence from the defense to support the self-defense theory; (4) the trial court erred in admitting evidence that Graciano habitually carried a knife; (5) the trial court improperly instructed the jury on the provocation and initial aggressor exceptions to self-defense; and (6) the cumulative effect of the trial court's errors requires reversal.  We address each contention.

## II.     Interrogation and Personal Knowledge

¶ 6     Graciano contends that his statement to police that "[he] let [his] emotions get the better of [him]" should have been excluded because the prosecution failed to prove it was not the product of

custodial interrogation. Alternatively, he contends that the court should have excluded the statement under CRE 602 because the deputy who testified to it lacked personal knowledge of the events. We are not persuaded.

## A.    Additional Facts

¶ 7     Defense counsel moved to suppress several statements Graciano made to the police. The motion however, specifically referenced only Graciano's statement, "I know what I did, I put myself here."[1]

¶ 8     At the motions hearing, Deputy Thompson testified that Graciano volunteered statements throughout his pat-down and arrest. Thompson explained that he patted down Graciano, took his belongings, and put them in a plastic bag. He did not believe he asked Graciano any questions at the scene or during the car ride to the police station. Thompson testified that during the pat-down, Graciano said, "This is just a family issue," and "I pushed my brother, but he used to push me . . . ; it's nothing but a family

---

[1] The court did suppress one statement, not expressly referenced in the motion, that Graciano made to Deputy Davis at the police station when Graciano was in a holding cell.

problem." And during the ride to the police station, Graciano again said, "It was a family issue. I let my emotions get the better of me."

¶ 9 Throughout the hearing, Thompson reviewed his report to refresh his memory of that day. He explained that it was his general rule not to question suspects during rides to the police station and that he prepared his report within one hour of the incident. During cross-examination, defense counsel asked whether he remembered how many officers were at the scene and who was there. Thompson responded, "To be honest, I don't recall this call at all" because "it was over a year ago," and he handled a lot of calls.

¶ 10 Defense counsel objected to Thompson reading directly from his report rather than using it to refresh his recollection. The trial court overruled the objection and reasoned that the parties were there for a motions hearing and not a jury trial.

¶ 11 The court acknowledged Thompson's waning memory and found it "not surprising given the length of time here." The court nonetheless found Thompson's testimony credible "on balance" and determined that the statements Graciano made at the scene during the pat-down were not in response to any questioning or other

4

actions that would be reasonably likely to elicit an incriminating response. The court further found that any statements Graciano made during the ride to the substation were spontaneous. Therefore, it found no violation under *Miranda v. Arizona*, 384 U.S. 436 (1966), and denied Graciano's motion as to those statements.

¶ 12 Before trial, defense counsel moved to preclude Thompson's testimony because he had "absolutely no personal knowledge of what happened." The court overruled the objection stating, "The fact that he may not have remembered much or almost all of what happened" was not "a basis to categorically exclude his testimony." Thompson testified consistently with his description of events at the motions hearing. He admitted that he had no specific memory of what occurred and was relying on his report. During cross-examination, defense counsel elicited testimony that Thompson could not recall the details of the day of the incident without reading his report.

B. Standard of Review and Applicable Law

¶ 13 Whether the district court erred by failing to suppress evidence presents a mixed question of fact and law. *People v. Kutlak*, 2016 CO 1, ¶ 13. We defer to the district court's factual

5

findings that are supported by the record, but we review the district court's legal conclusions de novo. *Id.*

¶ 14    Both the United States Constitution and Colorado Constitution guarantee individuals the privilege against self-incrimination. U.S. Const. amend. V; Colo. Const. art. II, §18; *People v. Sanders*, 2023 CO 62, ¶11. To safeguard this privilege, statements procured by custodial interrogation are generally inadmissible unless officers precede their interrogation with certain warnings. *People v. Davis*, 2019 CO 84, ¶ 16. Before undergoing a custodial interrogation, a suspect must be advised of his *Miranda* rights, which include the Fifth Amendment right to remain silent in the face of questioning, as well as the right to counsel. *People v. Arroya*, 988 P.2d 1124, 1129-30 (Colo. 1999). However, these warnings are required "only 'when a suspect is subject to both custody and interrogation.'" *Davis*, ¶ 16 (quoting *Effland v. People*, 240 P.3d 868, 873 (Colo. 2010)).

¶ 15    In this context, "'[i]nterrogation' refers to express questioning by a police officer as well as to 'words or actions . . . that the officer "should know are reasonably likely to elicit an incriminating response from the suspect."'" *People v. Gonzales*, 987 P.2d 239,

241 (Colo. 1999) (quoting *People v. Trujillo,*784 P.2d 788, 790 (Colo. 1990)).  In determining whether a suspect was interrogated, we consider the totality of the circumstances, focusing on "whether the officer reasonably should have known that [their] words or actions would cause the suspect to perceive that [they were] being interrogated, and whether those words or actions, like express questioning, could compel the defendant to overcome [their] desire to remain silent."  *People v. Madrid,* 179 P.3d 1010, 1014 (Colo. 2008).

¶ 16    "Under the due process clauses of the United States and Colorado Constitutions, a defendant's statements must be voluntary to be admissible as evidence."  *People v. Ramadon,* 2013 CO 68, ¶¶ 18-19 ("To be voluntary, a statement must be the product of an essentially free and unconstrained choice by its maker.").

¶ 17    We review a court's evidentiary rulings for an abuse of discretion.  *People v. Miller,* 2024 COA 66, ¶ 40.  A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair.  *Id.*

¶ 18    CRE 602 provides:

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that [he] has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness [himself].

## C. Analysis

¶ 19 We discern no error in the court's ruling denying the suppression motion, for two reasons.

¶ 20 First, the court found Deputy Thompson's testimony credible, including his testimony that he prepared his report within an hour of the incident, and we must defer to that finding. *See People in Interest of R.C.*, 2019 COA 99M, ¶ 7 (deferring to the district court's resolution of evidentiary conflicts and its determinations of witness credibility, the weight of the evidence, and the inferences to be drawn from it). Therefore, we reject Graciano's argument that the record does not support the court's findings due to Thompson's inability to recall the events without referring to his report.

¶ 21 Second, Thompson described Graciano's statements during the pat-down process and the ride to the substation and explained that neither of the statements was preceded by any questioning. He further explained that it was his general rule not to question

suspects during pat-downs and rides to the substation. Because the court considered all these circumstances when it found that Graciano's statements were not the product of interrogation, we discern no error in its ruling. *See Arizona v. Mauro,* 481 U.S. 520, 529 (1987) (a defendant's volunteered statements do not implicate the Fifth Amendment); *People v. Wood,* 135 P.3d 744, 749 (Colo. 2006) ("[P]urely spontaneous or volunteered statements made in the absence of counsel are admissible as '[t]he Fifth Amendment protects defendants from improper forms of police interrogation, not from their own impulses to speak.'" (quoting *Gonzales,* 987 P.2d at 243)). Accordingly, we conclude that Graciano's statements were not the product of interrogation and affirm the court's ruling.

¶ 22      We also reject Graciano's contention that the court should have precluded Thompson's trial testimony for lack of personal knowledge. The "threshold for satisfying the personal-knowledge requirement is not very high and may be inferable" from the "total circumstances surrounding the matter." *Curry v. Brewer,* 2025 COA 28, ¶ 52 (quoting *Murray v. Just In Case Bus. Lighthouse, LLC,* 2016 CO 47M, ¶ 33).

¶ 23      The threshold is met

> as long as there is evidence before the trial court that the jury, as the trier of fact, could reasonably find that the witness has personal knowledge of the event to which the witness is about to testify, the witness should be permitted to testify, and the questions of credibility and weight should be left for the jury to resolve.

*People v. Garcia*, 826 P.2d 1259, 1264 (Colo. 1992) (quoting *Burlington N. R.R. Co. v. Hood*, 802 P.2d 458, 469 (Colo. 1990)).

¶ 24    Here, Thompson testified that he prepared his report documenting the statements and the events that occurred within an hour of the incident.  Thus, he possessed personal knowledge at the time he prepared the report and subsequently relied on that report to recall what had occurred.  In our view, this constitutes sufficient evidence from which the jury could reasonably determine that Thompson had personal knowledge of the incident.  *See Garcia*, 826 P.2d at 1264.  Accordingly, we discern no violation of CRE 602 or abuse of discretion in the court's admission of Thompson's trial testimony.

### III.    Confrontation and Jury Trial Rights

¶ 25    Graciano next contends that his constitutional rights of confrontation and to a twelve-person jury were violated when one of

10

the jurors advised the court that she had trouble hearing all of Flores's cross-examination answers. We discern no abuse of discretion in the court's decision to remedy the issue by reading the cross-examination aloud from a transcript.

## A. Additional Facts

¶ 26 On the second day of trial, a juror told the court she had not fully heard Flores's cross-examination testimony. She said she "was having some trouble hearing when [Flores] was on the stand" because she was "a little bit hard of hearing and [didn't] have hearing aids or anything" and asked if Flores "could speak more into the microphone."

¶ 27 She thought she "did hear most of it" and "didn't really have any questions about what he said," but had "a little bit of trouble understanding some of the words." The trial court asked the juror what she meant by "most of it," and the juror responded that "some of the words were just a little bit mumbled for [her]" but that she "heard his testimony" and "didn't really have any questions about what he said." She explained that she could hear fine when the witnesses spoke into the microphone and that she missed some of

11

defense counsel's objections, but she could hear the court's rulings and knew what was going on.

¶ 28    When the prosecutor asked what she missed, the juror responded, "[W]hat words were exchanged." She summarized her understanding by saying she thought Flores said that Graciano was "hem hawing." Defense counsel then asked the juror if she knew how much she was unable to hear from Flores. The juror responded:

> It wasn't a lot. It was when . . . you were
> asking him what [Graciano] was, like, saying,
> what words were exchanged. And I could kind
> of hear him just say, oh, he was just kind of
> . . . hem hawing, going back and forth. So . . .
> I heard what he said but it just — that was
> really the most part that I was like I had to
> really, like, listen.

¶ 29    Because the juror did not hear the complete testimony, defense counsel moved for a mistrial or, in the alternative, to recall Flores. The court disagreed with defense counsel's characterization of the juror's explanation and found that the juror did not hear Flores because he was mumbling and that she did not "identify anything with specificity." The prosecutor agreed with the court and said the juror "heard most of everything [Flores] was saying,

12

there was just one part where he was asked a question about what was said and she heard more or less the gist of it." The prosecutor further argued that the juror did not miss any material portion of Flores's testimony.

¶ 30 The court denied both of the defense's requests, finding that a mistrial was too drastic a remedy and that the less severe option of allowing the jury to listen to a reading of the transcribed testimony of Flores's cross-examination was more appropriate. Defense counsel lodged a constitutional due process objection and argued that he should be allowed to recross-examine Flores before the jury. The court overruled the objection and read Flores's cross-examination transcript to the jury twice in open court — once before the jury instruction conference and again before deliberations began.

B. Standard of Review and Applicable Law

¶ 31 We review the district court's ruling involving jury irregularity for an abuse of discretion. *People v. Mollaun,* 194 P.3d 411, 416 (Colo. App. 2008). A district court abuses its discretion when its decision or action "is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous view of the law." *Id.* "When confronted

13

with allegations of irregularity in the jury's proceedings, the trial judge has broad discretion 'to determine what manner of hearing, *if any*, is warranted.'" *Id.* (quoting *United States v. Campbell*, 684 F.2d 141, 151 (D.C. Cir. 1982)).

¶ 32 The parties dispute the preservation of the confrontation clause and jury-of-twelve issues. Although the defense objected on due process grounds, counsel did not articulate objections based on the confrontation clause or the right to a jury of twelve. Therefore, we conclude these arguments are unpreserved because counsel objected on grounds different from those raised on appeal. Thus, we review these contentions for plain error. *See People v. Ujaama*, 2012 COA 36, ¶ 37 (an issue is unpreserved for appeal when an objection at trial was made on grounds different from those raised on appeal). Under this standard, we will reverse only if the error is obvious and substantial and so undermines the fundamental fairness of the trial itself as to cast serious doubt on the judgment of conviction. *Hagos v. People*, 2012 CO 63, ¶ 14.

¶ 33 The right of a criminal defendant to confront an adverse witness is guaranteed by the Confrontation Clause of the Sixth Amendment and article II, section 16, of the Colorado Constitution.

14

The Colorado Constitution's provision is more protective and states, "In criminal prosecutions the accused shall have the right . . . to meet the witnesses against him face to face . . . ." Colo. Const. art. II, § 16. Generally, the right to confrontation requires a witness to testify under oath, in open court, and face-to-face with the defendant. *People v. Collins*, 2021 COA 18, ¶ 39.

¶ 34 Although a criminal defendant is not entitled to a jury of twelve under the Sixth Amendment, they are guaranteed a "right to a jury of twelve in felony cases" under the Colorado Constitution. *People v. Rodriguez*, 112 P.3d 693, 698, 703 (Colo. 2005); *see* Colo. Const. art II, §§ 16, 23. Colorado's constitutional provisions are independent of, and may extend beyond, the Federal Constitution to offer greater protection for the people of Colorado. *People v. Young*, 814 P.2d 834, 842 (Colo. 1991), *superseded by statute on other grounds*, Ch. 292, sec. 8, § 16-12-102(1), 1993 Colo. Sess. Laws 1728-29.

## C.    Analysis

¶ 35 We discern no constitutional violations stemming from the trial court's ruling, for four reasons.

¶ 36    First, while we recognize the state constitution's language concerns face-to-face confrontation, we conclude that face-to-face confrontation occurred here. The record shows that the juror had no problems seeing Flores during cross-examination, so she was able to observe his demeanor throughout his testimony, even though she may not have heard a few mumbled words. Thus, this case is distinguishable from *People v. Boykins*, 140 P.3d 87, 93 (Colo. App. 2005), on that basis.

¶ 37    Second, the court credited the juror's testimony that she did not miss much of Flores's testimony and that only a few words were mumbled. Moreover, she was able to summarize the meaning of what she missed. Therefore, this case is unlike *People v. Trevino*, 826 P.2d 399, 401 (Colo. App. 1991), cited by Graciano, when a division of this court found a violation of the right to twelve jurors because a juror forgot to wear her hearing aids and missed a substantial portion of the trial testimony. And to the extent the juror here missed mumbled words, the court remedied that by allowing Flores's testimony to be read back on two separate occasions. Thus, we disagree with Graciano that the juror was unable to assess the credibility of his defense due to a few missed

16

words.  *See Forgette v. People*, 2023 CO 4, ¶¶ 16-18 (holding that possible juror misconduct, like sleeping or inattentiveness, does not implicate a defendant's right to a jury of twelve); *People v. Daley*, 2021 COA 85, ¶ 67 (allegation of inattentive or drowsy jurors did not rise to the level of constitutional juror misconduct).

¶ 38     Third, while we agree that a cold record is a poor substitute for live testimony, the juror here did not rely solely on a cold record to assess Flores's credibility because she was able to assess Flores's demeanor throughout his testimony.  Indeed, nothing in the record suggests otherwise.  Additionally, the juror had the surveillance video, which captured the incident, to evaluate the witnesses' descriptions and Graciano's defense.

¶ 39     Finally, to the extent Graciano challenges the court's remedy of reading the transcript of Flores's cross-examination to the jury, we discern no abuse of discretion.  "A mistrial is a drastic remedy that is warranted only when the prejudice to the accused is so substantial that its effect on the jury cannot be remedied by other means."  *People v. Cousins*, 181 P.3d 365, 373 (Colo. App. 2007) (quoting *People v. Dore*, 997 P.2d 1214, 1221 (Colo. App. 1999)).  The court stated that the brief portion of cross-examination that the

juror missed did not contain any substantial testimony. We agree and note that Graciano has not identified any specific responses that were not heard by the juror either during testimony or in the read-back transcript that demonstrate prejudice. Accordingly, we discern no obvious or substantial constitutional violation in the court's remedy.

## IV. Closing Arguments

¶ 40 Graciano next contends that the prosecution unconstitutionally shifted the burden of proof to him by telling the jury to "demand" more evidence of self-defense during closing arguments. We conclude reversal is not warranted.

### A. Applicable Law and Standard of Review

¶ 41 "Whether a prosecutor's statements constitute misconduct is generally a matter left to the trial court's discretion." *Domingo-Gomez v. People*, 125 P.3d 1043, 1049 (Colo. 2005). We will not disturb the trial court's rulings regarding such statements absent an abuse of that discretion. *People v. Strock*, 252 P.3d 1148, 1152 (Colo. App. 2010), *overruled in part by*, *People v. Kennedy*, 2025 CO 63.

¶ 42    When reviewing claims of prosecutorial misconduct, such as whether the prosecutor's statement lowered the burden of proof, we conduct a two-step analysis. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine whether the prosecutor's conduct was improper based on the totality of the circumstances. *Id.* Second, if the comments were improper, we evaluate whether they warrant reversal according to the proper standard of review. *Id.* In conducting this analysis, we consider the prosecutor's statement(s) in the context of the argument as a whole and in light of the evidence before the jury. *People v. Samson*, 2012 COA 167, ¶ 30.

¶ 43    Closing arguments cannot be used to mislead or unduly influence the jury. *Domingo-Gomez*, 125 P.3d at 1049. A prosecutor may not, for example, intentionally misstate the evidence, attempt to inflame the jurors' passions, or offer a personal opinion as to the defendant's guilt. *See id.*

¶ 44    We determine if reversal is necessary under the nonconstitutional harmless error standard. *See Hagos*, ¶ 12 (reversal required if the error substantially influenced the verdict or affected the fairness of the trial proceedings).

## B.    Analysis

¶ 45    During closing, the prosecutor told the jury the following:

> Let me be clear, the burden is ours.  The
> burden is mine to prove this charge beyond a
> reasonable doubt and I embrace that burden
> and I've met that burden.  But if the defense is
> going to give you a theory of defense, which
> they have in their instructions, you should
> demand more evidence from them.

Defense counsel objected to the statement and argued that it violated Graciano's due process rights by shifting the burden to the defense.  The trial court overruled the objection without discussion.

¶ 46    We agree with Graciano that the argument was improper.  Nevertheless, we conclude that the error was harmless and did not ultimately shift the burden of proof, for two reasons.

¶ 47    First, immediately preceding the misstatement, the prosecutor told the jury she had the burden of proof beyond a reasonable doubt.  This comported with the written jury instructions reiterating that burden and instructing the jury that the prosecution had the burden of disproving the element of self-defense.  When considered together, we conclude the written and oral jury instructions concerning the burden of proof rendered the court's error in failing to sustain the objection to the improper argument harmless.  We

20

assume, absent contrary evidence, that the jury understood and correctly applied the court's instructions. *People v. Abdulla*, 2020 COA 109M, ¶ 58.

¶ 48 Second, the statement occurred only once during closing arguments, so this fleeting statement did not prejudice Graciano, nor does the record evidence any bad faith. *Cf. People v. Kern*, 2020 COA 96, ¶ 16 (relatively brief and vague references were harmless). Accordingly, we conclude that any error was harmless. *See People v. Delsordo*, 2014 COA 174, ¶ 7.

## V.  Habit Evidence

¶ 49 Graciano next contends that the court violated his right to a fair trial by admitting evidence that he always carried a knife. We are not persuaded.

### A.  Additional Facts

¶ 50 Before trial, the prosecution informed defense counsel that it intended to introduce evidence that Graciano habitually carried a knife, under CRE 406, and argued that it was "neither a bad act [n]or a good act. It's just something he does out of habit. . . [, and] it's not implicitly a bad act." Defense counsel objected, and the trial

21

court ordered defense counsel to file a written motion with supporting case law and argument.

¶ 51 Defense counsel never filed a motion and instead orally argued in limine that the evidence was irrelevant. The trial court then asked the prosecution to lay a foundation for the habit evidence. The prosecution responded that Flores had personal knowledge that Graciano habitually carried a knife by virtue of being his family member. The trial court found that Flores's personal knowledge was a sufficient foundation and admitted the evidence of Graciano's habitual carrying of a knife under CRE 406. The court also told defense counsel that they could object to the evidence during trial.

¶ 52 On direct examination, the prosecution asked Flores whether he had "any personal knowledge as to whether or not the defendant ha[d] particular habits as far as carrying any weapons?" Defense counsel objected and argued lack of foundation, and the trial court overruled the objection. Flores said he knew that Graciano "always carr[ied] a knife with him." Flores also stated that Graciano was "somebody that don't have no kind of integrity, loyalty, respect." The prosecutor interrupted Flores and stated, "Let me stop you

22

right there." The court struck Flores's statement and instructed the jury to disregard it.

### B. Standard of Review and Applicable Law

¶ 53 We review a trial court's evidentiary rulings for abuse of discretion. *Nicholls v. People*, 2017 CO 71, ¶ 17. A trial court abuses its discretion only when its ruling is manifestly arbitrary, unreasonable, or unfair. *Id.*

¶ 54 To be admissible, evidence must be relevant. CRE 401. Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.*

¶ 55 Habit evidence is admissible to prove that a person's conduct on a particular occasion was in conformity with their habit or routine practice. CRE 406; *People v. T.R.*, 860 P.2d 559, 562 (Colo. App. 1993). CRE 406 provides that "[e]vidence of the habit of a person . . . , whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person . . . on a particular occasion was in conformity with the habit or routine practice." A habit "'denotes one's regular response

23

to a repeated situation' and 'is the person's regular practice of responding to a particular kind of situation with a specific type of conduct.'" *People v. Trujillo*, 2015 COA 22, ¶ 10 (citation omitted). For example, "a person may be in the habit of bounding down a certain stairway two or three steps at a time, of patronizing a particular pub after each day's work, or of driving his automobile without using a seatbelt." 1 Kenneth S. Broun et al., *McCormick On Evidence* § 195, Westlaw (Robert P. Mosteller ed., 9th ed. database updated Feb. 2025) (*McCormick On Evidence*). The "doing of the habitual act may become semi-automatic, as with a driver who invariably signals before changing lanes." *Id.*

¶ 56 In contrast, character evidence is a "generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty." *Trujillo*, ¶ 11 (quoting *McCormick On Evidence* § 195).

### C. Analysis

¶ 57 As best we can discern, Graciano argues that habit evidence must constitute a response to a certain stimulus, and the fact there was no stimulus renders Graciano's habit of always carrying knife

as improper character evidence. We reject this argument for two reasons.

¶ 58 First, the plain language of CRE 406 does not require that habitual conduct be in response to a particular stimulus but, instead, simply requires that a person's conduct on a particular occasion conform with their habit. Moreover, Graciano has not cited any authority stating that the absence of such a stimulus transforms the conduct into character evidence. For example, one's habit of driving the same route home from work every day occurs without a particular stimulus and does not constitute character evidence. *See McCormick On Evidence* § 195. We also note that before trial, the trial court denied the prosecution's motion to introduce evidence of two prior violent incidents involving Graciano and Flores, under CRE 404(b).

¶ 59 Second, habit evidence is admissible to prove that the conduct of a person on a particular occasion was in conformity with the habit. Character evidence, however, is not admissible for the purpose of proving that a person acted in conformity with his or her character on a particular occasion. CRE 404(a); *see People v. Ayala*, 919 P.2d 830, 832 (Colo. App. 1995). We conclude that the

25

act of carrying a knife does not in and of itself constitute a bad act or describe any general character trait. Indeed, many people of good character regularly carry knives. Here, the prosecutor laid a proper foundation and offered the evidence to rebut Graciano's self-defense theory, not to prove Flores's state of mind or to impugn Graciano's character. While minimally relevant, the fact that Flores knew Graciano always carried a knife made it less likely that Flores used unlawful physical force against Graciano.

¶ 60 Further, we note that defense counsel made a foundation objection, not a character evidence or relevance objection. And this evidence is distinguishable from the prior acts of Graciano's aggressiveness that the court excluded under CRE 404(b). Absent those facts, it is far less likely that the jury perceived Graciano as a bad person, particularly when the evidence showed that an argument preceded the showing of the knife.

¶ 61 To the extent that Graciano argues that Flores crossed the line and testified about his character when he blurted out that he did not want to be around people like Graciano, we conclude any prejudice was cured because the trial court instructed the jury to disregard the statement. Absent contrary evidence, we presume the

jury understood and followed this instruction. *See Abdulla*, ¶ 58

("[W]e employ the presumption that the jury understands and

applies the given instructions unless a contrary showing is made

. . . .")

## VI.   Jury Instruction

¶ 62     Graciano next contends that the trial court plainly erred by

instructing the jury on the provocation and initial aggressor

exceptions to self-defense.  We are not persuaded.

### A.     Standard of Review and Applicable Law

¶ 63     We review jury instructions de novo to determine whether the

instructions accurately informed the jury of the governing law.

*People v. Theus-Roberts*, 2015 COA 32, ¶ 18.  If they do, the trial

court enjoys substantial discretion in formulating the instructions

and deciding whether additional instructions are required.  *Id.*  We

also review de novo whether sufficient evidence exists to support a

requested jury instruction, reviewing the evidence in the light most

favorable to giving the instruction.  *Castillo v. People*, 2018 CO 62,

¶ 32; *People v. Silva*, 987 P.2d 909, 914 (Colo. App. 1999).

¶ 64     Because the issue is unpreserved, we review for plain error.

*See People v. Leyba*, 2019 COA 144, ¶ 55, *aff'd*, 2021 CO 54.

Reversal under this standard requires that the error be obvious and so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *See Hagos*, ¶ 14.

¶ 65 A trial court has a duty to correctly instruct the jury on all matters of law for which there is sufficient evidence to support giving instructions. *People v. Knapp*, 2020 COA 107, ¶ 20. However, a court shouldn't instruct the jury "on abstract principles of law unrelated to the issues in controversy, nor . . . on doctrines or principles which are based upon fanciful interpretations of the facts unsupported by the record." *Castillo*, ¶ 34 (quoting *People v. Alexander*, 663 P.2d 1024, 1032 (Colo. 1983)). Thus, a trial court must determine whether there is sufficient evidence to warrant a jury instruction as to a defense and any exceptions to that defense. *Id.*

¶ 66 A person is justified in using physical force upon another person "in order to defend himself . . . from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person." § 18-1-704(1), C.R.S. 2025.

¶ 67    When properly raised, the prosecution must disprove beyond a reasonable doubt the existence of self-defense.  *Castillo*, ¶ 39.  One way for the prosecution to meet that burden is to prove that an exception to self-defense applies.  *Id.* at ¶ 40.  Initial aggressor and provocation are two such exceptions.

¶ 68    A defendant may be the initial aggressor if they "initiated the physical conflict by using or threatening the imminent use of unlawful physical force."  *Id.* at ¶ 41 (citation omitted).  A court may give an initial aggressor instruction "if the evidence will support a reasonable inference that the defendant initiated the physical conflict by using or threatening the imminent use of unlawful physical force."  *People v. Griffin*, 224 P.3d 292, 300 (Colo. App. 2009).

¶ 69    Under the provocation exception to self-defense, a defendant is "not justified in using physical force" against another person if the defendant, "[w]ith intent to cause bodily injury or death to another person, . . . provokes the use of unlawful physical force by that other person."  § 18-1-704(3)(a).

¶ 70    When a court instructs the jury on an exception to self-defense, that exception must be "supported by some evidence."

29

*Galvan v. People*, 2020 CO 82, ¶ 25.  This is a low burden that requires the proponent to produce a scintilla or small quantum of evidence.  *Id.* at ¶ 24.

### B.    Analysis

¶ 71    We discern no error in the court's instructions, for two reasons.

¶ 72    First, some evidence supported the prosecution's theory that Graciano was the initial aggressor.  Flores testified that Graciano was the initial aggressor.  The surveillance footage also shows that Graciano pushed Flores first as Flores was exiting the store.  Therefore, the video evidence alone provides more than a scintilla of evidence that Graciano was the initial aggressor.  *See People v. Newell*, 2017 COA 27, ¶ 28 (If "the prosecution has offered evidence that the defendant was the initial aggressor, the jury should be provided with the . . . initial aggressor exception[] and be permitted to weigh the evidence to decide whether self-defense has been disproved.").

¶ 73    Second, we reach the same conclusion as to provocation.  *See Knapp*, ¶ 23; *see also Silva*, 987 P.2d at 914 ("In order to warrant the giving of [a provocation] instruction, the prosecution has the

burden of establishing that the defendant intended to harm the victim and that he . . . intended the provocation to goad the victim into attacking him . . . as a pretext for injuring or killing the victim."). Here, viewing the evidence in the light most favorable to giving the provocation instruction, *see Silva*, 987 P.2d at 914, we conclude some evidence supported the provocation exception. Flores's testimony and the video evidence show that Graciano provoked Flores by shoving him as Flores was walking out the door and that the two argued outside the store before Flores attempted to kick Graciano. The prosecution argued that if a kick occurred, it was provoked by Graciano's shove and verbal threats, and we cannot say at what point the jury concluded that Graciano had menaced Flores. *See Galvan,* ¶ 25 (The court "should instruct the jury on the provocation exception or any other exception to that defense if the exception is supported by some evidence.").

¶ 74 Accordingly, we discern no error in the court's self-defense instruction and conclude it is supported by the evidence.

## VII. Cumulative Error

¶ 75 The cumulative error doctrine applies when "the cumulative effect of [multiple] errors and defects substantially affected the

31

fairness of the trial proceedings and the integrity of the fact-finding process." *Howard-Walker v. People*, 2019 CO 69, ¶ 24 (quoting *People v. Lucero*, 615 P.2d 660, 666 (Colo. 1980)).

¶ 76　　However, because we have found only one error and have concluded that error was harmless, we necessarily conclude the cumulative error doctrine does not apply. *See People v. Villa*, 240 P.3d 343, 359 (Colo. App. 2009) (cumulative error analysis is required only when multiple errors have been identified).

## VIII.  Disposition

¶ 77　　The judgment is affirmed.

JUDGE BROWN and JUDGE SCHUTZ concur.